O’NIELL, Chief Justice.
 

 This is a suit on a health insurance policy for $10 a week during the period of illness, not exceeding 104 weeks. The plaintiff was stricken with pulmonary tuberculosis while the policy was in force, and was under the care of a physician and confined to bed from the end of December, 1932, beyond the time of trial of the suit. He died after the ease was argued in this court. The attending physician made reports of the illness to the company, regularly, on printed forms furnished by the company, and according to the terms of the policy; but, after ten or more of such reports and demands for payment had been made, the company denied liability. It does not appear that any reason was given to the insured by the company for denying liability, until the company answered this suit.
 

 More than four months having gone by, after the first proof of illness and demand for payment was made, the plaintiff brought this suit for double indemnity and for $500 attorney’s fee, under the provisions of Act No. 310 of 1910, p. 527. He alleged that his illness had become so pernicious that it would confine him to bed, under the care of a physician, beyond the period of 104 weeks, if he lived that long. Hence he asked for judgment for $2,080, with interest at 5 per cent, per annum on each weekly installment from the date of its maturity, besides the attorney’s fee of $500.
 

 The insurance company, answering the suit, pleaded that the policy was obtained by fraud and misrepresentation on the part of Jake Williams’ sister, Bessie Wells, who was named in the policy as the beneficiary under a provision for a funeral benefit of $137.50'.; and that the company’s agent, Billingsly, in Shreveport, where the policy was applied for, and the company’s district manager, Floyd, connived and conspired with Bessie Wells in the fraud and deception perpetrated upon the company, whose domicile and headquarters were in Chicago. In that connection the company alleged that the application for insurance, which was received by the company in Chicago, from its district manager and agent in Shreveport, bore what purported to be, and what the officers of the company believed to be, the signature of Jake Williams, with the statement that he. had been inspected by the company’s field manager in Shreveport; although, as a matter of fact, unknown to the
 
 *428
 
 company, Jake Williams was not then in Shreveport, but was in Birmingham, Ala., and was not inspected by an agent or representative of the company, and did not sign the application for insurance. The company alleged that the name, Jake Williams, purporting to be his signature to the application, was written by Bessie Wells, with the approval and connivance of the company’s district manager, Eloyd, and the agent, Billingsly., 'and with their knowledge that the company would not issue the policy if the company knew that the application was not signed by Jake Williams, or that he had not been inspected by a representative of the company. The company averred that, in furtherance of the alleged conspiracy to defraud the company, the district manager, Eloyd, and the agent, Billingsly, and Bessie Wells, procured some one, whose name was not known to the company, to be at the home of Bessie Wells, in Shreveport, on the 9th of April, 1931, and pretend to be Jake Williams, and submit to inspection, as Jake Williams, by the company’s field superintendent, O. E. Harper; and that the unknown man, who was so procured to impersonate Jake Williams, and who was also a party to the conspiracy to defraud the company, was in fact at the home of Bessie Wells on the 9tli of April, 1931, and was there inspected as Jake Williams, by the company’s field superintendent, Harper, who was told by the impersonator that he was Jake Williams. The company alleged that Bessie Wells knew, at the time of the inspection of the unknown individual, that Jake Williams had been afflicted with plural lesions and tuberculosis, and could not stand inspection for health insurance. The company alleged that the policy was delivered by their district manager and agent in Shreveport, not to Jake Williams, but to Bessie Wells; and that the company did not know of the fraud or conspiracy, or know any of the facts pertaining thereto, until this suit had been filed; hence the company tendered to the plaintiff the amount of the premiums which had been collected, 858.50, and the accrued court costs, 84.65. The tender was refused by the plaintiff. The company made an alternative allegation to the effect that, if the policy was valid, the company was not liable because Jake Williams had had plural lesions and tuberculosis, and had been treated therefor from April to October, 1930, and that his illness continued and progressed until he made the claim for which he brought this suit. The company prayed that the policy should be decreed null, because of the alleged fraud, and that judgment should be rendered only for the amount of the premiums collected, 858.50, and costs already accrued, 84.65, and, in the alternative, even if the policy should be declared valid, that the plaintiff’s demand should be rejected at his cost.
 

 Two months after the answer was filed, the insurance company filed a so-styled “Motion to Reduce the Demand of the Plaintiff,” averring and praying that the demand should be reduced to the indemnity claimed to be due at the time the suit was filed, or, if not at that time, at the time of the trial of the case. The motion was not heard separately, or called for hearing in advance of the trial of the case on its merits, but was submitted when the ease was tried and submitted on its merits.
 

 
 *430
 
 The district court gave judgment for the plaintiff, not for double indemnity, but for the weekly installments of $10 each, commencing on the 7th of January, 1933, and continuing during the period of disability, not beyond 104 weeks, with interest at 5 per cent, per annum on each installment from the date of its maturity until paid, and for $150 attorney’s fee, and the costs of court. The defendant has appealed; and the plaintiff, answering the appeal, has asked for double indemnity, under the provisions of Act No. 310 of 1910, imposing the penalty where payment is withheld without just or reasonable cause.
 

 The defendant’s so-styled “Motion to Reduce Demnd of Plaintiff” was, in substance and effect, a plea of prematurity. A plea of prematurity is unavailing unless it is filed before issue is joined. Code Prac. art. 333; Lurie v. Titcomb, 139 La. 9, 71 So. 200; Simon v. McMeel, 167 La. 243, 119 So. 35. The plea in this case was filed after the defendant had answered the suit; and, as it was not an alternative plea, and was therefore not consistent with the defendant’s denial of liability, it was properly overruled.
 

 The question of duration of the illness of the insured, and hence the question of the number of weekly payments for which the insurance company is liable, if liable at all, is disposed of by the fact that the insured, Jake Williams, died on the 17th of May, 1934. The heirs and legal representatives of the deceased, being his two sisters, Bessie Williams Wells and Mattie Williams Ensley, have been made parties to the appeal, as plaintiffs and appellees. There is no dispute of the fact or of the date of the death of Jake Williams, or of the right of inheritance of Bessie Williams Wells and Mattie Williams Ensley; hence there is no request or necessity to order the case remanded for proof of these facts.
 

 The defendant’s allegations of fraud on the part of Bessie Wells and Jake Williams, and collusion between them and the district manager and local agent of the company; were entirely unfounded and unjustified. The facts which were proven in that respect were not denied by the witnesses for the defendant. Jake Williams was treated by a physician for lung trouble and was threatened with tuberculosis in April or May, 1930,' but the illness responded to treatment, and he was soon discharged as cured by the physician. Thereafter, in October or November, 1930, a solicitor for the insurance company, who had insured Bessie Wells and her husband, and who had often solicited Jake Williams for health and accident insurance, persuaded him to take out the insurance. He was then residing at the home of Bessie Wells and her husband, in Shreveport. He was inspected by the company’s field superintendent, Harper, and was found and certified to be in good health, before the policy was issued. Thereafter, Jake Williams went with his employer to Birmingham, Ala., and was employed there as a chauffeur. He continued to pay the weekly premiums on his insurance policy for several months. But, about the 1st of April, 1931, the policy had lapsed for nonpayment of premiums for several weeks. It was subject to revival, however, by payment of the premiums past due. Williams then sent to his sister, Bessie Wells, in
 
 *432
 
 Shreveport, the amount of money necessary to revive the policy, with instructions to her to attend to having the policy revived. She called at the office.of the company, in Shreveport, and, offering to pay the past-due premiums, requested a revival or reinstatement of the policy. The district manager, Floyd, asked Bessie Wells where Jake Williams was, and .she replied that he was in Birmingham, Ala., working for an automobile company. Floyd asked if Williams was in good health, and Bessie Wells replied that he was in good health. Floyd then suggested that it would be cheaper for Williams to take out a new policy than to revive the old one; and she, of course, accepted the suggestion. Accordingly,, the district manager instructed the agent,- Billingsly, to make out the application for insurance. Billingsly wrote the application, on one of the printed forms furnished by the company, and, under the instructions of the district manager, Bessie Wells signed the application for Jake Williams, without indicating that she signed as agent, or that the signature was not that of Jake Williams; and Billingsly signed the application as a witness to the signature. At the same time, Billingsly, under the direction of Floyd, wrote a “Medical Examination or Inspection Report” on a printed form furnished by the company; and, under the instructions of Floyd, Bessie Wells signed the report for Jake Williams, without indicating that she was signing as his agent, or that the signature was not that of Jake Williams. Thereafter, O. E. Harper signed the report, as field superintendent, certifying that he had inspected the applicant, that he did “personally witness the above signaturé,” and that he recommended “Approval” of the report. The “Application for Insurance” and the “Medical Examination or Inspection Report” were both dated April 9, 1931. As a matter of fact, Harper did not inspect or see Jake Williams in April, 1931, because Williams was then in Birmingham, Ala., and remained there until late in December of that year. The “Medical Examination or Inspection Report,” to which Bessie Wells had signed the name Jake Williams, was afterwards handed to Harper by Floyd or Billingsly, and Harper signed it and returned it to Floyd or Billingsly. Harper testified, as a witness for the defendant in this case, that the document was delivered to him by Billingsly. When asked if he had actually made the inspection, he said that he must have done so, otherwise he would not have “okayed” the report, because he was “supposed to go to the parties and ask with reference to their health.” The judge then asked him whether he remembered making the inspection, or was merely relying upon the record in that respect, and he admitted that he was relying upon the record. The attorney for the company then asked Harper if he had inspected “someone supposed to be Jake Williams,” and he answered that he must have done so, because otherwise he would not have signed the report. But the witness afterwards admitted that he was acquainted with Jake Williams; hence it was-impossible for him to have examined an imposter, as alleged in the company’s answef to this suit. Other testimony in the case shows that there was no truth in that allegation. Harper had inspected Jake Williams for the first policy of insurance, which lapsed
 
 *434
 
 for nonpayment of premiums, and could not have been deceived by the use of a dummy for inspection for the second policy. Bessie Wells denied that any such fraud was committed; and no one testified that any such fraud was committed. Floyd and Billingsly were not employed by the company at the time of the trial; but Billingsly testified as a witness for the company and corroborated the testimony of Bessie Wells, as to the making and signing of the application for insurance, in the presence and under the direction of Floyd, and with his knowledge that Jake Williams was then in Birmingham. The successor of Floyd, as district manager for the company, testified that several times after this claim was made he called at the residence of Bessie Wells and there interviewed her and Jake Williams with regard to the claim. The attorney for the company then asked the witness if Jake Williams and Bessie Wells, or either of them in the presence of the other, had stated that Harper had inspected Jake Williams, at the residence of Bessie Wells, in April, 1931; and the witness admitted that no such statement was ever made to him. On cross-examination the witness was asked where he had obtained the information on which the company made the allegations of fraud, in the answer
 
 to
 
 this suit; and the witness replied that he had not made the allegations, or the answer to the suit. He said that the information on which he recommended that the company should refuse to pay the claim was obtained from his interviews with Bessie Wells and the physician who attended Jake Williams in his illness; and particularly the information that Jake Williams was not in Shreveport when the application for insurance was made.
 

 The illness of Jake Williams, for which this claim was made, and the justness of the claim, was proven by the testimony of the attending physician and by that of Jake Williams, and was not denied by any witness in the case. Williams became ill in Birmingham, in December, 1931, and was admitted to a hospital there for treatment. Later in the same month he returned to Shreveport and consulted the physician who had treated him for the previous illness. About the 30th of that month the physician pronounced Williams’ illness tuberculosis, and he was thenceforth confined to bed. He testified at the trial of this case; but the physician testified, and there was no denial of the fact, that Williams was then a hopeless victim of tuberculosis.
 

 The alternative defense, that Jake Williams was not in sound health at the time of the application for insurance, and that the statement made in the application that he was in sound health was false, is also without merit. The district judge allowed testimony to be .heard on the subject, over the objection of the plaintiff’s attorney that Act No. 52 of 1906, as amended by Act No. 227 of 1916, forbade any statement
 
 to
 
 be used in defense of a claim on any policy of insurance issued by any life insurance company doing business in this state if the statement was not indorsed upon or attached to the policy when issued. Our opinion is that the testimony was not admissible, because the statements with regard to the health of the insured were not indorsed upon or attached to
 
 *436
 
 the policy in this instance. That is a matter of no importance, however, because the only testimony that was introduced on the subject was that the insured was apparently in sound health at the time of the application for insurance, and for several months theretofore and thereafter.
 

 The claim for double the amount of the insurance is well founded. Act No. 310 of 1010 allows double the amount of the insurance and the attorney’s fee, as a penalty, if the company’s refusal to pay within the time allowed is “without just and reasonable grounds such as to put a reasonable and prudent business man. on his guard.” Section 2. The fact alleged in the defendant’s answer to this suit, and testified to by the manager who issued the policy for the company in Chicago, that no officer of the company had any knowledge of the alleged fraud, until some, time after this suit was filed, serves only to show that the company had no just or reasonable cause for withholding payment of the claim beyond the time allowed by the statute. In fact, the district manager, in charge of the Shreveport office at the time of the trial, admitted in his testimony that the information on which he recommended a denial of liability was obtained from Bessie Wells and from the physician who attended Jake Williams in his illness; and the record shows that the information which Bessie Wells and the physician gave to the district manager could not have justified a denial of liability on the part of the insurance company. There is no demand for an increase of the amount allowed for the attorney’s fee, in the answer to the appeal.
 

 After the case was argued and submitted to this court for decision, the insurance company filed a motion to remand the case to take the testimony of Mr. Floyd, who was the district manager of the company, at Shreveport, when the policy of insurance was applied for and issued, but who was not in the company’s employ when the claim was made, on which this suit was brought. Floyd had left Shreveport and could not be located by the company at any time after the claim was made, until he appeared again m Shreveport, after the ease was argued in this court and submitted for decision. It is alleged in the motion, and in an affidavit made by Floyd and attached to the motion, that he, Floyd, if given an opportunity to testify, would contradict the testimony of Bessie Wells and of Billingsly, that the application for the insurance was written and signed in his presence and under his direction; and it is alleged that Floyd would testify that, when he received the application and forwarded it to the company, he relied upon the statement that the applicant was then residing in Shreveport and had been personally inspected by the agent of the company. Mr. Floyd’s affidavit does not only contradict the testimony of Bessie Wells, whose credibility is not otherwise impeached, but the affidavit tends to impeach the testimony of Billingsly, whose credibility was, in effect, vouched for by the defendant in tendering him as a witness. For that reason, as well as because the defendant, in answering this suit, accused Mr. Floyd of being. a party to the alleged fraud, the testimony which he proposes now to give would not alter our conclusion that no fraud was committed by either Bessie
 
 *438
 
 Wells or Jake Williams. We decline, therefore, to remand, the case.
 

 Decree.
 

 The judgment appealed from is amended by increasing the amount of the weekly payments which the defendant is condemned to pay from $10 per week to $20 per week, and by fixing the number thereof at 71 payments; all of which payments are now past due. Accordingly, it is ordered, adjudged, and decreed that Bessie Williams Wells and Mattie Williams Ensley, as the heirs and legal representatives of Jake Williams, recover of and from the defendant, Washington National Insurance Company, $1,420, with interest at 5 per cent, per annum on each one of the 71 weekly installments of $20 each, from the date of maturity of each weekly installment, commencing on the 7th day of January, 1933, until payment is made; together with the attorney’s fee of $150, with interest thereon at 5 per cent, per annum from judicial demand, September 10, 1933, until paid, and all costs of this suit. As thus amended the judgment appealed from is affirmed.