14035

MANN v. TRAVELERS' INS. CO.

(179 S. E., 796)

*Messrs. Melton & Belser,* for appellant,

*Messrs. Robinson & Robinson* and *J. M. Cantey, Jr.,* for respondent,

April 2, 1935.

The opinion of the Court was delivered by MR. E. C. DENNIS, ACTING ASSOCIATE JUSTICE.

The complaint alleged that on May 4, 1930, defendant issued to plaintiff the accident policy on which this suit is

brought. That on February 4, 1932, plaintiff suffered a fall, as a result of which he became totally disabled and entitled to $50.00 per week under the terms and conditions of the policy. That the disability was recognized by the defendant, which paid certain expenses for treatment of the plaintiff under the terms of part D of the policy, and paid disability at the rate of $50.00 per week for several weeks.

"6. That this accident of February 4, 1932, resulted in total permanent disability of the plaintiff, including post traumatic lesion of the midbrain, a progressive condition for the treatment of which this plaintiff has been continually, since the date of the accident, under the care of a physician.

"7. That in May, 1932, under the advice of his physicians, and in order to take the plaintiff's mind off of his own condition, which his physicians felt would be beneficial, this plaintiff, with the consent of his employer, Westinghouse Electric Company, went back to his duties with them, and allowed the defendant company to suspend their weekly payments to him during the period he was attempting to work and draw compensation from the Westinghouse Electric Company."

That, although plaintiff attempted to do his work and spent considerable time in the office of his employer, he was unable to perform his work, and therefore it fell upon others; that his employer allowed him to continue to draw his salary until July 1, 1933, at which time he was discontinued, and his condition has not improved. That plaintiff has been totally and continuously disabled since the date of his accident and is entitled to the benefits of his policy, less those amounts paid him by defendant and those he voluntarily relinquished. Demand for payment from July 1, 1933, to December 29, 1933, the date of the commencement of this action amounting to 25 weeks at $50.00 per week.

The defendant demurred to the complaint upon the grounds:

"(a) There is no allegation or showing that the plaintiff complied with the provisions of the said policy or that he is entitled to any relief thereunder.

"(b) It appears therein that plaintiff was not rendered totally disabled by reason of the alleged accident in February, 1932.

"(c) It appears therefrom that plaintiff during May, 1932, had a final settlement with defendant of his claims for total disability under said policy.

"(d) The said complaint is so vague and indefinite as to the essential terms of the alleged contract sued upon that it fails to state any cause of action whatsoever for breach of contract or otherwise."

This demurrer was overruled.

The defendant then served its answer, the salient parts of which are as follows:

"2. Answering Paragraphs 3, 4, 5, 6, 7, 8, and 9 of the said complaint, this defendant admits that the plaintiff claimed to have been injured on or about the 4th day of February, 1932; that as a result thereof Plaintiff submitted proofs of claim to this defendant for total and partial disability benefits under the said policy, and that pursuant to the said proofs of claim so submitted this defendant did pay to the plaintiff total disability benefits thereunder at the rate of Fifty ($50.00) Dollars per week from February 5, 1932, to May 2, 1932, and for partial disability benefits thereunder from May 2, 1932, to June 23, 1932, and that this defendant paid to the plaintiff altogether the sum of Fifteen Hundred Eighty-nine and 25/100 ($1,589.25) Dollars under the said policy in full payment, settlement and discharge of any and all claims and benefits to which the plaintiff was entitled under the said policy, and that thereafter the plaintiff returned to work, as defendant was informed and believed, in the full performance of his duties, and upon information and belief this defendant expressly denies that the plaintiff became or was totally and con-

tinuously disabled or was or is entitled to any further benefits under the terms of the said policy."

Second, for a second defense.

"1. Alleges that it is expressly provided in and by the terms of the policy herein sued upon by the plaintiff that the defendant should not in any event be liable for the total disability benefit of Fifty ($50.00) Dollars per week therein provided for the total loss of time unless the injuries complained of should 'independently and exclusively of all other causes, * * * wholly and continuously disable the insured from date of accident from performing any and every kind of duty pertaining to his occupation,' in which event the Company would pay the said weekly indemnity of Fifty ($50.00) Dollars per week only 'for the period of such continuous total disability'; that the said alleged injury complained of in said complaint, as defendant is informed and believes, did not wholly and continuously disable the said plaintiff from the performance of his duties, but on the contrary the said plaintiff did for a long period of time after the said alleged injury perform the usual duties of his occupation, and hence there is no liability whatsoever on the part of this defendant to the said plaintiff under the terms of the said policy."

Third, for a third defense.

"1. Alleges that it is provided in and by the terms of the said policy herein sued upon by the plaintiff that if the injuries complained of should wholly and continuously disable the insured from performing any and every kind of duty pertaining to his occupation, this defendant would pay to the said insured weekly indemnity at the rate of Fifty ($50.00) Dollars per week for the period of such continuous total disability, and that if such injuries independently and exclusively of all other causes should wholly and continuously disable the insured from performing one or more important daily duties pertaining to his occupation, or for like continuous disability following total loss of time, the Com-

pany would pay during the period of such disability, but not exceeding twenty-six consecutive weeks, a weekly indemnity for partial loss of time of two-fifths of the amount payable for total disability; that under and pursuant to the terms of said policy this defendant did pay to the plaintiff herein upon the execution of the said plaintiff of sworn proofs of loss of total disability benefits as therein provided from February 5, 1932, to May 2, 1932, at the rate of Fifty ($50.00) Dollars per week, and did also pay to the said plaintiff partial disability benefits therein at the rate of Twenty ($20.00) Dollars per week from May 2, 1932, to June 23, 1932, and did also pay on account of the plaintiff's said injuries certain medical and hospital expenses, and that all of the said payments aggregating Fifteen Hundred Eighty-nine and 25/100 ($1,589.25) Dollars were made by this defendant upon due and sworn proofs of claim for disability benefits, and upon the understanding and condition that the said payments constituted payment in full of all claims whatsoever for total disability benefits under the said policy and a settlement in full of all of this defendant's liability thereunder to the plaintiff; and that by reason of the said payments and said sworn proofs of claim upon which the said payments were made, all of this defendant's liabilities to the plaintiff under the said policy have been fully paid, settled and discharged."

The trial resulted in a verdict for the full amount sued for.

The pertinent parts of the policy are as follows:

"TOTAL AND PARTIAL DISABILITY—SINGLE INDEMNITY

"Total Loss of Time.——Or, if such injuries, independently and exclusively of all other causes, shall wholly and continuously disable the Insured from date of accident from performing any and every kind of duty pertaining to his occupation, the Company will pay weekly indemnity at the rate hereinbefore specified for the period of such continuous total disability, but not exceeding fifty-two (52)

consecutive weeks. After the payment of weekly indemnity for fifty-two (52) weeks as aforesaid the Company will continue weekly payments of the same amount thereafter so long as the Insured shall be wholly and continuously disabled by such bodily injuries from engaging in any occupation or employment for wage or profit.

"Partial Loss of Time—Or, if such injuries, independently and exclusive of all other causes, shall wholly and continuously disable the Insured from date of accident from performing one or more important daily duties pertaining to his occupation, or for like continuous disability following total loss of time, the Company will pay during the period of such disability, but not exceeding twenty-six consecutive weeks, a weekly indemnity of two-fifths of the amount payable for total disability.

"No payment of weekly indemnity shall be made in case of any loss enumerated in Part A, except as therein provided."

The evidence shows that plaintiff suffered a fall on February 4, 1932, and filed his claim for total disability, which the defendant then paid from February 5, to May 2, 1932, and paid partial disability from May 2, to June 23, 1932. On or about this date the plaintiff undertook to return to work, but there was evidence to show that the defendant, through its representatives, kept in touch with the plaintiff and knew his physical condition at all times, and especially at the time he undertook to go back to work. The defendant was informed by a letter that the plaintiff intended to go back to work and would make no claim for compensation while working, but would not sign any release until it appeared that he had entirely recovered.

There was evidence that plaintiff was never able to do his work after the accident, but only parts of it, and that the permanency of his disability became so apparent that he was finally discharged. He then brought this action.

The appellant strenuously contends that the fact that plaintiff undertook to return to work and was able to perform a part of his duties and to draw his full salary for a time would preclude his recovery. The conduct of the plaintiff is highly commendable, as he showed that he was doing all he could to minimize the liability of the defendant. If the fact that the insured undertook to do his regular work, even when his final recovery was doubtful, would preclude recovery, it would encourage less scrupulous people to refuse to work so long as they could draw disability compensation.

It is claimed by appellant that the provisions of this policy are different from the ones heretofore construed by this Court, and is not governed by the law announced in other decisions as to total and permanent disabilities.

While the provisions in this policy which are set out, *supra,* are different from some of the policies, the same principle is involved and the same law is applicable. The definition of total disability used by the trial Judge is sustained by the decisions of our Court, and it seems necessary merely to cite the cases without further discussion of the law. *Berry v. United Life & Accident Ins. Co.,* 120 S. C., 328, 113 S. E., 141, 7 Ann. Cas., 815, note; *Brown v. Missouri State Life Ins. Co.,* 136 S. C., 90, 134 S. E., 224; *McCutchen v. Pacific Mutual Life Ins. Co.,* 153 S. C., 401, 151 S. E., 67; *Gresham v. Aetna Life Ins. Co.,* 159 S. C., 326, 156 S. E., 878; *Davis v. Metropolitan Life Ins. Co.,* 164 S. C., 444, 162 S. E., 429; *Caldwell v. Volunteer Life Ins. Co.,* 170 S. C., 294, 170 S. E., 349; *Austell v. Volunteer State Life Ins. Co.,* 170 S. C., 439, 170 S. E., 776; *Black v. Jefferson Stand. Life Ins. Co.,* 171 S. C., 123, 171 S. E., 617; *Marshall v. Kansas City Life Ins. Co.,* 171 S. C., 321, 172 S. E., 504; *Dukes v. Jefferson Stand. Life Ins. Co.,* 172 S. C., 502, 174 S. E., 463; *Jones v. Equitable Life Assur. Soc.,* 173 S. C., 213, 175 S. E., 425; *Taylor v.*

*Southern States Life Ins. Co.,* 106 S. C., 356, 91 S. E., 326, L. R. A., 1917-C, 910.

Plaintiff's first exception is to the order overruling the demurrer. This exception cannot be sustained.

The second, third, and fourth exceptions are overruled, as these questions were based upon an erroneous idea of the law applicable, and any opinion responsive to these questions would not have been responsive to the issue.

Exceptions five, six, and seven refer to certain testimony. In view of the fact that the defendant claimed full settlement, this testimony was admissible to show the entire transaction, and these exceptions are overruled.

Exceptions eight and nine refer to the refusal of the presiding Judge to grant a nonsuit or a directed verdict. These exceptions are overruled, as there was evidence which made it necessary that the matter be submitted to the jury.

Exceptions eleven to sixteen, inclusive, question the correctness of the Judge's charge.

As above stated, the charge of the Court was in accordance with the well-settled law and these exceptions are overruled.

Exceptions ten and seventeen, which state that the verdict of the jury was contrary to the law and the evidence, are overruled.

Judgment affirmed.

MR. CHIEF JUSTICE STABLER, MESSRS. JUSTICES CARTER and BONHAM and MR. ACTING ASSOCIATE JUSTICE C. J. RAMAGE concur.