**HILL et al. v. UNIVERSAL LIFE INS. CO. OF MEMPHIS, TENN.**

No. 16051.

Court of Appeal of Louisiana. Orleans.
April 15, 1935.

company, issued a policy of life and sick benefit insurance, allege that at the time of the death of the said Orlando Hill there were due her under the policy eight weekly payments at $5 each, for sick benefits. As heirs, they make claim for the said $40 and, invoking the provisions of Act No. 310 of 1910, they also seek to recover double indemnity and a reasonable attorney's fee.

The insurer, admitting the issuance of the policy, interposes several defenses. It contends that at the time the said insured made application for the policy she "was not in good health * * * and was suffering from a malignant and incurable heart disease, high blood pressure, nephritis and myocarditis, which she wilfully concealed when making application * * *" for the issuance of the policy, and which later caused her death.

Defendant further asserts that during the lifetime of the said insured she compromised all right to make claim for the sick benefits for which claim is now made, and "readily consented to accept the sum of $10.00 in full payment of all sick benefits."

Defendant also maintains that in any event its refusal to pay the sick benefit claims was not without probable cause, and was therefore not arbitrary or unreasonable, and it contends, therefore, that even if its defenses on the merits are not sustained, nevertheless, it should not be held liable for the penalty and the attorney's fee as provided by the statute of 1910, where payment is refused "without just and reasonable grounds."

Another contention of defendant is that even if its defenses are held to be unreasonable and arbitrary the penalties referred to should not be imposed because such penalties may only be awarded to the original claimant, and may not be claimed by heirs where the original insured party has died.

Still another point raised by defendant is that Act No. 310 of 1910 does not apply where the policy is one of life insurance, but is applicable only where the claim rejected arises out of a policy of sick or accident insurance.

In the court, a qua, there was judgment for plaintiffs for $40, that being the amount of the original claim, and also for $80 as a penalty and for an attorney's fee which the court fixed at $25. Defendant has appealed.

The defense that at the time the policy was applied for the applicant was already afflicted with various diseases cannot prevail

Rudolph O. Vorbusch, of New Orleans, for appellant.

Normann & McMahon and Harold M. Rouchell, all of New Orleans, for appellees.

JANVIER, Judge.

Plaintiffs, as sole heirs of Orlando Hill, to whom defendant, an industrial insurance

for two reasons: First, the evidence with reference thereto having been objected to, it should have been excluded because the policy was issued without medical examination and because the application was not attached to the policy. Act No. 97 of 1908, as amended by Act No. 195 of 1932. Also Act No. 52 of 1906, as amended by Act No. 227 of 1916. See, also, Massachusetts Protective Ass'n v. Ferguson, 168 La. 271, 121 So. 863; Eagan v. Metropolitan Life Insurance Company, 181 La. 16, 158 So. 575; Williams v. Unity Industrial Life Ins. Co., 14 La. App. 680, 130 So. 561. Second, because the evidence on this point, which was admitted over objection by plaintiff's counsel, did not show any illness or ailment at the time of the application for the policy.

There is no doubt that during the period of eight weeks, for which claim is made, the insurer was not only sick, but was completely helpless and was confined to her bed. The medical testimony as to her condition at that time is given by Dr. Alsobrook, who treated, her, and by a colored physician, Dr. Brazier, who was sent by defendant.

Dr. Alsobrook testified that the insured's condition "was such that she could not get up. * * * She was also swollen, the abdomen was swollen and the heart wouldn't allow her out of the bed and she used tubes to drink and the bed pan and those sorts of things."

Dr. Brazier saw her on April 2d, which was four days prior to the commencement of the period covered by the claim. He said: "She seemed to be suffering from a cardio renal condition, there was evidently chronic myocarditis with hypotension and kidney trouble or Bright's disease."

Further in his testimony when asked: "She was very sick, was she not? he answered "Yes, sir, quite sick."

The release, which seems to be much relied on by defendant, is a document executed on April 2d, 1934, reading as follows:

"Apr. 2, 1934.

"Rec. is acknowledged and full release and acquittance is given to the Universal Life Ins. Co. of Tenn., its successors and assigns for all claims due me by them by reason of disability of injury, or otherwise, or in any manner whatever by reason of my being insured with them under Policy No. 821125 Dated 10/31/32.

"The above is accepted by me as full settlement of any claim arising thereunder and is not to be construed an admission of liability by the company.

"4/2/34. Recom. one week on this illness.
                    "[Signed] Orlando Hill.
"Witness:
    "A. W. Brazier, M. D.
    "Andrew Hill."

When this document was executed the insured had already been ill nearly two weeks, and at the end of two weeks she would have been entitled to $10 under the terms of the policy. It is contended that the so-called release was executed as evidence of a written compromise in which the insurer agreed to settle the claim for two weeks' benefits in full if the insured would agree to waive and abandon all possibility of further claims for future disability benefits resulting from that particular illness.

■ Pretermitting consideration of the various points made by counsel for plaintiff as to want of consideration, failure to attach the release to the policy, and the other matters discussed in Cobb v. Unity Industrial Life Ins. Company, 19 La. App. 539, 140 So. 877, we at once direct our attention to the wording of the document itself, and we notice that there is nothing therein which indicates that there was any intention to waive or abandon any further claims for sick benefits resulting from the then existing illness or from any other. The document is no more than a receipt for the amount "due" and a discharge from all liability for this amount. The so-called release was prepared by a representative of defendant company. If there existed an agreement that there was to be a release from all claims already due and also from all possible future claims, that intention should have been set forth clearly in unambiguous terms.

We conclude that since there was complete disability during the period in question, and since there has been no compromise or settlement, the amount claimed under the policy is due.

■ We next consider defendant's contention that there can be no assessment of the penalties provided by the act of 1910 because that statute has application only where the policy insures against "sickness or accident" and does not apply where life insurance is involved. The policy here plainly contains dual protection. It provides that, in case of death, payment of a certain sum will be made to the beneficiary, and it also provides that, in case of sickness or accident, payment of

weekly benefits will be made to the insured. The penalty provided by the act of 1910 applies so far as sickness or accident claims are involved, though there could be no recovery of the penalty had the claim been one under the other feature of the policy. .

The case of Canal-Commercial Trust & Savings Bank v. Employers' Corp., 155 La. 720, 99 So. 542, 545, is not authority for a contrary view. There the claim was made under the death feature of a policy. This is also true of Brown v. Continental Casualty Company, 161 La. 229, 108 So. 464, 45 A. L. R. 1521; Michel v. London & Lancashire Indemnity Company, 162 La. 160, 110 So. 186, and Thomas v. Masonic Relief Ass'n (La. App.) 142 So. 318.

Defendant denies the right of the heirs to make claim for the penalties, contending that such claim may be made only by the insured prior to death, and that, unless suit therefor has been actually instituted by an insured prior to death, the claim for the said penalties is lost entirely.

■■ In Williams v. Washington National Life Insurance Company, 180 La. 423, 156 So. 453, the Supreme Court allowed the heirs of an insured person to recover the penalties provided by the act of 1910, but defendant contends that that case is not controlling, and declares that there the suit had been filed by the insured prior to death, and that when death intervened his heirs were merely permitted to succeed to his rights which had already been crystallized into a litigated claim. Although it is true that the penalty statute provides for payment of the penalty "to the assured," and although it is also true that such legislation, being penal in character, must be strictly construed, still, we feel that the payment of the penalty in such a case as this is not a payment otherwise than "to the assured," because it is the claim of the assured which is being presented, and the heirs have come into possession of the claim of the assured through inheritance. The principal claim—for sick benefits—was due to the assured. When that claim was rejected—assuming for the moment that it was rejected without just and reasonable cause—the right to the penalty also came into being. It could then have been presented by the assured. But the assured died before either the principal claim or the claim for penalties could be presented. At her death her heirs inherited her right to both parts of the claim. Her death did not terminate the claim for the penalties. Canal Commercial Trust & Savings Bank v. Employers' Corp., supra, is not au-

thority to the contrary. The claim involved there was presented not by an assured, nor by heirs of the assured, but by heirs of a beneficiary. In the opinion itself is found the following: "In the case at bar the claim is being asserted by the heirs of the beneficiary, and not by the assured."

Since the heirs of the assured may be heard to claim the penalty, and since the principal claim is one to which the statute of 1910 is applicable, it becomes necessary that we determine whether the rejection of the claim was made upon just and reasonable grounds.

The record shows abundantly that the assured was completely helpless during the period for which the claims were rejected. Even the physician sent by defendant testified to this.

■ The so-called release shows plainly that it did not relieve the company from liability for weekly payments during the eight weeks involved here, and, finally, the decision in Cobb v. Unity Industrial, supra, should have been amply sufficient to warn defendant that the contentions made could not be sustained in court. Therefore, the knowledge of the serious condition of the assured and the knowledge of the conclusions reached in the Cobb Case render it impossible that we view defendant's refusal to pay as other than arbitrary. If arbitrary it was unreasonable, and if unreasonable it justifies the imposition of the penalty.

■ But the penalty awarded is greater than is authorized by the statute. In Wilkins v. Universal Life Ins. Co. (La. App.) 159 So. 185, we interpreted the statute as authorizing a penalty equal to the amount of the claim. There our holding is well expressed in a syllabus reading as follows: "Statute imposing penalty of 'double' amount due under health or accident policy where insurer delays payment held to require double rather than triple payment of amount withheld (Act No. 310 of 1910, § 3)."

The attorney's fee, which is fixed at $25, is reasonable.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, amended, by reducing the amount thereof to $80, together with $25 attorney's fees, and with legal interest on all said amounts from the date of judicial demand, and, as thus amended, it is affirmed; the costs of appeal to be paid by plaintiffs appellees; all other costs to be paid by defendant appellant.

Amended and affirmed.