18377

Edwin C. SCHNEIDER, Appellant, v. TRAVELERS INSURANCE
COMPANY OF HARTFORD, CONNECTICUT, Respondent

(143 S. E. (2d) 449)

*Messrs. Jack F. McGuinn* and *Joseph L. Nettles,* of Columbia, *for Appellant,*

*J. Edwin Belser, Jr., Esq.,* of Columbia, *for Respondent,*

July 13, 1965.

Moss, Justice.

Edwin C. Schneider, the appellant herein, while employed as an industrial insurance salesman and collector with Carolina Life Insurance Company, was insured under a group accident policy, dated October 1, 1957, by Travelers Insurance Company of Hartford, Conn., the respondent herein. This policy provided for a monthly indemnity of $250.00 for total disability resulting from accidental bodily injuries. The policy excluded from coverage the first sixty days of any period of total disability and provided, *inter alia,* as follows:

"If such injuries shall, within thirty days after the date of accident, result in continuous total disability (hereinafter defined) the Company will pay monthly indemnity at the rate specified in the Schedule (one-thirtieth of the monthly indemnity rate for each day of any period or part thereof less than one month) for the period of such continuous total disability, but indemnity shall not be paid for the waiting period (if any) specified in the Schedule.

" 'Total Disability' as used herein means complete inability of the insured to engage in any and every occupation or employment for wage or profit, but during the first 24 months of any period of disability the Insured shall be deemed totally disabled while he is unable to perform any and every duty pertaining to his occupation and is not engaged in any occupation or employment for wage or profit.

"Periodic payment will be made in case total disability for which indemnity is payable continues more than one month."

The appellant instituted this action on July 13, 1959, alleging that while the aforesaid policy was in full force and effect he was, on October 12, 1957, struck by an automobile and as a result thereof became totally disabled. The appellant submitted to the respondent proof of his claim for total disability benefits under the aforesaid policy. It appears that the respondent, pursuant to such claim so made, paid to the appellant total disability benefits for the period from December 12, 1957 to May 27, 1958, at the rate of $250.00 per month, or a total of $1,375.00.

The appellant further alleged in his complaint that after receiving the aforesaid payments that he informed the respondent that he would attempt to work on a trial basis to see if he could overcome his disability. It is further alleged that after so informing the respondent, the appellant sought and obtained employment with the United States Government in a clerical capacity for a period of about ten months on a trial basis, but at the end of such trial period he was discharged on account of his inability to perform his work because of the aforesaid disability. It is then alleged that the appellant applied to the respondent for a reinstatement of his disability benefits under the aforesaid policy. He says that he furnished the respondent with medical reports setting forth that he was not capable of doing the type of work that was required of him before his injuries and could perform work only under a protected job situation because of his disability. It is alleged that the respondent refused to pay the appellant total disability benefits under the said policy and that he is entitled to recover the sum of $250.00 per month, as provided for in said policy in the event of total disability, for the period from April 1, 1959 to the date of this action.

The respondent admits that the appellant while insured under a term policy of group accident insurance, as an

employee of Carolina Life Insurance Company, sustained bodily injuries in an accident on October 12, 1957. After the prescribed waiting period total disability benefits, in the amount of, for the period hereinbefore stated, were paid to the appellant until he went to work for the United States Government on May 27, 1958. The respondent alleges that it paid the appellant the sum of $1,375.00 in full payment, settlement and discharge from any and all claims and benefits to which he was entitled under the said policy. The respondent expressly denied that the appellant became or was totally and continuously disabled or was and is entitled to any further benefits under the terms of the said policy. It further alleged that no premiums had been paid upon the said policy since the appellant secured employment with the United States Government and that by reason of said nonpayment of premiums the policy lapsed and since January 1, 1958 had been of no force and effect.

This case came on for trial before Honorable Legare Bates, and a jury, in the Richland County Court. At the close of the testimony in behalf of the appellant, the respondent made a motion for a nonsuit on the grounds (1) that the appellant was not totally disabled within the meaning of the aforesaid policy for the reason that the evidence shows that he was able to and did return to gainful employment; (2) that the appellant released the respondent of all liability, which terminated his right to disability benefits by accepting a final payment from the respondent and returning to work; and (3) that the policy upon which this action is based lapsed for nonpayment of premiums and since January 1, 1958 had been of no force and effect. The motion of the respondent was granted and this appeal followed.

The insured contends that the question of whether he was totally and permanently disabled within the meaning of the aforesaid policy, should have been submitted to the jury. The answer to this question requires a review of the testimony offered in behalf of the appellant.

The appellant was an insurance salesman and collector for Carolina Life Insurance Company, and had been so employed for a period of more than three years at the time of his injuries. His employment required him to collect premiums on existing policies and to sell industrial, ordinary, hospital and accident policies. In so doing, he was required to do considerable walking, to go in and out of buildings and up and down stairs. On October 12, 1957, while so employed, he was struck by an automobile and received severe injuries involving his head, face, back and right leg, resulting in hospitalization. A physician testified that during this period his progress was reasonably good and he was discharged from the hospital for further care at home as an outpatient. After a few days at home the appellant developed a rather severe phlebitis or blood clot in his right leg and as a result of this he was readmitted to the hospital for further treatment. The physician stated that this hospitalization was rather rough in that the phlebitis was rather severe and was also complicated by a large facial abscess which had to be drained surgically. He was given large doses of antibiotics and anticoagulants and after discharge from this second hospitalization he was again treated as an outpatient until May, 1958.

This physician testified that the appellant was interested in going back to work and he thought that the work attempt would be the best way to really decide whether the appellant was physically able to return to work. At that time his physician said: "I advised him that his type of work would certainly have to be changed and I did not feel that he could actually hold up under work that required him to stand for prolonged hours or walking or doing a reasonable amount of physical activity." He further testified that he examined the appellant prior to his taking the clerical work with the United States Government and "I agreed with him at that time that I thought he was physically able to attempt work and we decided that if he could obtain the right position that it would probably be wise for him to go ahead and

try it." This same physician testified that he examined the appellant after he had been discharged from his employment with the United States Government and found that he had some hypertension and was still suffering with edema or swelling of his right leg as the result of his phlebitis. He stated that the appellant had recurring episodes of superficial clots in his leg following his accident, and such still gives him "a fair amount of difficulty, especially in trying to walk or stand on it for any length of time." This physician recited the complaints of the appellant that he was easily fatigued, was having numbness in his arms, fingers and hands, and was mentally lethargic and was having difficulty as far as his memory was concerned. Based upon this examination, the physician concluded that the appellant had hypertension or elevation of blood pressure and some hardening of his radial arteries, was suffering from a certain amount of arterial sclerosis, decreased cerebral brain circulation, and such could have conceivably been a postconcussion type syndrome and that such follows head injuries. This physician testified that based upon his physical examination of the appellant, a history of the case, and the fact that he was discharged because of errors in his work, that the appellant probably was not able to engage in the occupation that he had attempted. He testified that the appellant's disability was related to the injuries received on October 12, 1957, and that such disability has continued since that time in one form or another and there has been no interruption of such.

It appears from the record that the appellant was to be employed in the Quartermaster Corps for the United States Government. He was to do clerical work and such involved a lot of transcribing from shipping documents. When he first went with the government he was under an extensive training program. His immediate supervisor testified that the appellant "would get nervous under the amount of work that we had to do, under the lengths of time we had to turn this work out in." He further testified that when the

drivers were loading their trucks and waiting for their bills of lading that the appellant seemed to be under a lot of pressure congregated with these people. He further said that any one could have done the work assigned to him with the amount of training that they had given the appellant or one who had a high school education; that the appellant, after he would get so nervous, would get up and walk around the building, would come back in and try to start all over again but he continued to make màny errors in his work. This same witness testified that after having given the appellant a six months rating on his job that it was decided to give him more training but from that period on his errors were worse and worse until he was finally discharged because of his inability to perform his work. This witness did not know of the appellant's past history of an accident and the resulting disability therefrom but he did say upon being questioned thereabout that the appellant seemed to be trying to hide his disability.

The appellant, in his testimony, described the nature of his duties with his employer and how he was injured on October 12, 1957. He then gave the following testimony:

"Q. Now, what happened in May, 1958?

"A. Well, in May, 1958, I got in touch with the Travelers Insurance Company by letter and advised them that I was going to try out a government job, and even though I realized I had a disability and was not sure that I could hold the job, I wanted to go out and give it a trial anyway, on a trial basis and I wanted to do that because I was fed up with being on the shelf. I had worked since I had got out of school down here way back yonder years and years ago. I have been active every year of my life and every day of my life until this thing happened, and when this thing happened I was laid on the shelf and that is devastating to the mental attitude and all that of any man.

"Q. You told the insurance company this?

"A. Yes.

"Q. And did you ask them to continue paying you benefits?

"A. No. I told them that I would like for them to hold up on the benefits until I could go out and try this job out and see whether I could make a go of it and then—that was what I really had asked them to do, hold up on the benefits until I could go out and see whether I would be able to do the job."

The appellant testified as to obtaining work with the United States Government and of his discharge from such employment because of his inability to do the work and of making errors which he didn't seem to be able to stop. As to his disability, he said that he had a lot of dizziness and tottery feeling in his head, the cause of which he ascribed to being struck thereon from about a five foot angle down on the pavement. He said he had a deadness, aches, and pains from the back of his neck down through his shoulders and arms and to his ankles, and a constant deadness in his hands and fingers, a phlebitis in one leg. He testified that he could not stay on his feet all day and had to lie down at least about two hours per day, and that his right leg swells and that both legs feel tottery and insecure, and when he tries to walk he has to hold to something to keep from tottering around. He said he had considerable trouble with his memory and his thinking was not as alert as it was before his injury. He has trouble getting his mind to properly function.

The factual situation in the case under consideration is strikingly similar to that found in the case of *Mann v. Travelers Ins. Co.*, 176 S. C. 198, 179 S. E. 796. In the cited case it appears that the insurance company recognized the fact of Mann's disability, as a result of a fall he sustained, and paid him for about three months for a total disability and about six weeks for partial disability. About five months after the accident, the insured's physician advised him to try to do some work to take his mind off his condition, and with the cooperation of his employer he was

given his former job. The insurance company was informed by letter that the insured intended to go back to work and would make no claim for compensation while working. For about one year the insured performed only part of the work required of him but received his full salary. At the end of that time he was discharged on account of his disability. The insurance company refused to resume payment on benefits contending that the fact that the insured undertook to return to work and was able to perform a part of his duties and to draw his full salary for a time would preclude his recovery. This Court held, in affirming a judgment entered on a verdict for the insured, that this contention of the insurer was without merit and that the conduct of the insured was highly commendable, as he showed that he was doing all he could to minimize the liability of the insurance company and that if the fact of his undertaking to do his regular work, even when his final recovery was doubtful, would preclude recovery, it would only encourage less scrupulous people to refuse to work so long as they could draw disability compensation.

On careful consideration of the entire evidence in this case, and in the light of our decision in the Mann case, we think that the question of whether the appellant was totally and permanently disabled within the meaning of the aforesaid policy should have been submitted to the jury. It follows that the trial judge was in error in granting a nonsuit.

We come now to the question of whether the appellant released the respondent of all liability which terminated his right to disability benefits by accepting a final payment from the respondent and returning to work.

It appears from the record that prior to going to work for the United States Government, the appellant notified the respondent that even though he had a disability he "was going to try out a government job", and for it "to hold up on the benefits until I can go out and try this job out and

see whether I can make a go of it." The aforesaid notice was given in May, 1958. It appears that as a result of being so notified that the respondent, by letter dated July 3, 1958, and addressed to the appellant, forwarded him a draft in the amount of $125.00 with the accompanying statement "Since you resumed gainful employment on May 27, 1958, we are enclosing additional and final draft in the amount of $125.00 which pays indemnity to the date you returned to work." In another letter of the same date, the respondent stated "The disability for which you have been receiving regular claim payments stands entirely on its own merits. Any payment which is due you, which developed as a result of a disability arising during the term of the contract, will be paid. We cannot assume a continuing liability for an indefinite period, after you are physically able, and do return to work."

The draft for $125.00, according to the respondent's own letter, was to pay disability benefits to the date the appellant returned to work. Admittedly, it covered only a period of one-half month, or for the period May 12, 1958, to May 27, 1958, and such draft represented one-half of the indemnity of $250.00 per month for total disability, resulting from accidental bodily injuries. Due to the fact that at the time of the aforesaid payment there was no disputed claim, there could have been no compromise or settlement of such. Consequently, there was no consideration for the purported release of liability of the respondent to pay disability benefits thereafter. It has been soundly held that where an insurance company pays only what is then due under its policy as an indemnity for disability, and nothing further is then demanded, a release from liability for any future claim under its policy is invalid for want of consideration. *Moore v. Maryland Casualty Company*, 150 N. C. 153, 63 S. E. 675, 24 L. R. A., N. S., 211; *Hill v. Universal Life Insurance Co.*, La. App., 160 So. 457; *Sutton v. Continental Casualty Co.*, 168 S. C. 372, 167 S. E. 647. It follows that the attempt here to discharge the insurer's liability for

future disability payments was without consideration and of no force and effect.

The final question for determination is whether the Trial Judge erred in concluding that the appellant's claim for total disability benefits, resulting from an accidental injury on October 12, 1957, is barred by any subsequent lapse of the policy. Admittedly, the appellant was struck by an automobile on October 12, 1957 and the respondent recognized that he was totally disabled by paying the benefits provided in said policy for such disability during the period of time hereinbefore stated. If the appellant became totally disabled on October 12, 1957, within the meaning of the terms of the policy of insurance, and such disability continued until the bringing of this action, his rights thereunder had accrued, and the obligation of the insurer was fixed to pay the insured according to the terms thereof. Here, the injury to the appellant, which he asserts caused his total disability, took place while the policy in question was in full force and effect, and if such total disability continued beyond January 1, 1958, the date of the alleged lapse of the policy, the insurer would not be relieved by such lapse from the payment of the monthly payments provided in said policy.

We find in Appleman, Insurance Law and Practice, Vol. 1A, section 644, at page 548, the following: "The rights of the insured, where disability occurs prior to the lapse of the policy, are considered vested or fixed, so that recovery can be had." In support of the foregoing rule there is cited the case of *Prudential Ins. Co. of America v. Calloway,* 54 Ga. App. 863, 189 S. E. 545. We quote the syllabus from the cited case, as follows:

"Rights of insured under group policy providing for payment of benefits for total and permanent disability held to have accrued after insured became totally and permanently disabled before policy lapsed, fixing obligation of insurer to pay according to terms of policy."

252

The exceptions of the appellant are sustained, the judgment of the lower Court is reversed and the case remanded thereto for a new trial.

Reversed and remanded.

TAYLOR, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.