## HALBERT v. KLAUER MFG. CO.
### No. 5607.

Court of Appeal of Louisiana. Second Circuit.

March 8, 1938.

Rehearing Denied April 1, 1938.

76

T. L. Clark and J. H. Dormon, both of Monroe, for appellant.

Hudson, Potts, Bernstein & Snellings, of Monroe, for appellee.

HAMITER, Judge.

A money judgment for $612.95 is sought by plaintiff in this suit. The petition recites in substance that plaintiff entered into an agreement with defendant, the Klauer Manufacturing Company, through its duly authorized agent, F. D. Underwood, under which he was to receive a commission should he bring about the sale of certain culvert pipe to the Halbert-Williams & Company, Inc., and H. S. Sims; that said sale was consummated; and that his commission in the above amount was earned and is due and owing to him.

Jurisdiction of the case was afforded the trial court through and by means of the issuance of a writ of attachment and seizures thereunder.

The answer of defendant generally denies the alleged indebtedness, and affirmatively avers that a specific understanding was had with Underwood that no commission was due on the asserted sale until the account was fully paid, and that a commission is presently due to no one for the reason that payment and settlement for the pipe sold has not yet been made.

The judgment of the trial court, rendered after trial of the merits, dismissed plaintiff's action as of nonsuit and dissolved the writ of attachment. Plaintiff appealed suspensively and devolutively.

The brief of plaintiff's counsel states that the introduction of certain depositions and attached exhibits on behalf of both parties litigant, during the trial, has served to enlarge the original pleadings and to change the theory of the case. Plaintiff now contends that his claim is founded on a written assignment executed in his favor by said Underwood.

The record discloses that during the year 1934, Halbert-Williams & Company, Inc., a Louisiana corporation of which plaintiff Halbert was president, and H. S. Sims, an individual, possessed two contracts with the highway commission of Arkansas for the performance of certain road construction work in that state. A partnership agreement existed between said corporation and Sims with reference to the undertakings. One of the contracts covered a project located at Earl, in Crittenden county, while the other provided for construction in Yell county.

In the early part of the aforementioned year, one F. D. Underwood, a resident of Little Rock, Ark., wrote to defendant corporation soliciting authority to sell its culverts on a commission basis in the state of Arkansas. Thereafter, in reply to a letter written by defendant, Underwood stated:

"I am a commission salesman and want my money when due and very well know when you don't get yours I don't get mine."

Defendant's response of May 4, 1934, contained the following language:

"We are preparing a schedule of prices for you which will show your exact costs in carloads, delivered throughout the State. You understand these prices will show *your costs* delivered and any profit you would want to make, should be added when you make your sales to the Counties. We can ill afford to ship into Arkansas, in L. C. L. quantities, you appreciate that fact, due to our geographical location.

"We would also want it distinctly understood that any commissions to be paid you, would not be settled until we have our money out of the Counties or whomever you may sell."

Later Underwood contacted plaintiff Halbert, whom he had known for approximately ten years, with the view of selling the culvert pipe necessary on the above described two projects. A proposal was made to plaintiff that if he effected sales with Halbert-Williams & Company, Inc., and H. S. Sims on both contracts that the commission due on the Earl, Crittenden county, job would be paid to him, plaintiff. The proposal was accepted and a letter evidencing the agreement was given by Underwood. No knowledge of this offer, with resultant acceptance, was had by defendant at the time of its confection. The transaction was handled by the commission salesman in his individual and personal capacity.

On November 19, 1934, Underwood forwarded to defendant a work blueprint and an order for a carload of pipe to be shipped to the above named contractors for the

Earl, Ark., project. In the accompanying letter defendant was instructed to issue a credit memorandum to plaintiff, and Underwood stated with reference thereto that he and Halbert had "arranged details of settlement."

On receipt of the order and instructions, defendant informed Underwood that the shipment would have to be invoiced to the contractors for the full amount at which they accepted, and that sum of money would be expected from them; and that the credit memorandum would be issued solely to him, Underwood, to whom the commission would be paid. Approval of the contractors regarding the stated method of handling was required by defendant before shipment would be made.

Underwood later telegraphed: "Met Halbert today. He will notify when to ship. Everything o. k."

The commission on the sale was for the sum claimed in this suit, and represented thirty percent of the invoice price of the materials.

Shipment was directed in a telegram of February 14, 1935.

On February 28, 1935, after the purchased pipe had been placed in transit, defendant issued in favor of F. D. Underwood a credit memorandum regarding the commission to be paid him, and stamped thereon were the words, "Misc. accounts payable."

The material for the Yell county project was not furnished by defendant, but by a competing concern whom Underwood also represented.

In August of 1935, because of a lack of funds, the contractors defaulted on their contracts, and the projects were taken over for completion by the surety on the contract bonds which they had given when the work was undertaken. Payment for the materials had not been made to defendant, and it engaged in much correspondence with Underwood, Halbert, the surety, and others in an effort to collect the claim.

In a letter of October 20, 1935, Underwood authorized defendant to credit his commission on the contractors' account. Defendant replied:

"The way we understand, from the information we have that the Bonding Company is going to pay us direct. We do not care to open our records on this discount to the Bonding Company. As soon as this account is paid, we will send on the commissions due you, as per the original agreement. We believe that will be the best way to handle this."

On October 25, 1935, Underwood signed a letter addressed to defendant in which he instructed that his commisson of $612.95 due on the pipe sold on the Earl, Ark., project be paid to plaintiff, W. G. Halbert. It is this order or instrument of assignment on which plaintiff principally relies for recovery herein and to which reference has hereinabove been made. The assignment was enclosed in a letter of November 1, 1935, dispatched by plaintiff to defendant, and in which the following was said:

"This commission is no way connected with Halbert-Williams Co. and H. S. Sims. This commission was earned by me and that is why I am sending you this order, I am expecting this commission to be direct to me, hoping this will meet with your approval."

Defendant stated to Underwood, in a written communication dated October 29, 1935, that no commission would be paid until the account was settled.

Prior to or about this last-mentioned date, defendant called upon the surety on the contractor's bond for payment of its claim as invoiced. Defendant was informed by the surety on November 29, 1935, that:

"Mr. Halbert claims he had an agreement with your salesman to allow a discount of thirty per cent from your invoice price, and insists that the amount due you is only $1430.28, which amount we are in a position to pay."

It was not until February 22, 1936, that the surety learned that the discount of 30 per cent. was a personal claim of plaintiff and not one on behalf of the contractors.

Thereafter, the bonding company sent to defendant its check for the invoice amount less the 30 per cent. claimed as a discount, this deduction being claimed on the theory that it did not owe any sum which was to be returned to plaintiff individually or to the contractor corporation, of which he was president, and which was a principal on the contract bond. The tender of this check was refused. Defendant would not accept it unless the commission claimed by Underwood, and later assigned to plaintiff, was satisfactorily settled by the surety; and this settlement was never made.

It will be observed from the foregoing recitation of the important facts in

the case that the commission salesman, Underwood, understood fully that he was to receive no compensation for his efforts in effecting a sale of the pipe until the invoice price, which included his anticipated 30 per cent. commission, was paid in ·full to defendant; and the agreement entered into between him and plaintiff Halbert, which was entirely personal to those parties and later ripened into the assignment relied on,· was subject to that understanding. Consequently, the assignee, Halbert, had no greater rights as against defendant for recovery of the commission claim than did the assignor, Underwood. This conclusion is concurred in by counsel for plaintiff, for they state in their brief that:

"Of course plaintiff has only such rights against defendant as Underwood had. Under this assignment, plaintiff has merely stepped into Underwood's shoes. In this connection, and in all fairness, we concede that Underwood was not to be paid his commission until defendant was paid for the pipe sold. The pipe was sold on credit to Halbert-Williams Company, Inc., and H. S. Sims and Underwood was given credit for his commission at the same time, but Underwood was. not to be paid until his principal was paid."

However, they call attention to the holding of the trial court—which was that as long as payment of the account has not been actually made to defendant plaintiff's demand is premature—and argue that, "such condition of affairs leaves plaintiff in an unhappy situation," and that defendant will do nothing toward collection from the bonding company and thus plaintiff is left with only a premature right against defendant.

The evidence in the record is not convincing that defendant and the surety are or have been conniving to deprive or defraud plaintiff of his claim. On the contrary, it discloses that every possible effort, with the exception of actually filing suit, has been made by defendant to collect the full invoice price of the materials from the surety; and if it had succeeded, plaintiff would have received the commission claimed. Furthermore, while negotiations for settlement of the account were pending, the surety wrote to Halbert-Williams & Company, Inc., stating that:

"The Klauer Manufacturing Company is threatening to sue our company for $2,043.20 unless same is paid promptly. We will be forced to pay this amount plus court costs unless you can at once furnish me evidence to the effect that you had an agreement with that company's representative whereby you were to be allowed a discount from the invoice price.

"Klauer is entirely willing to allow the discount, if you will furnish it some evidence that its representative who sold you the material˙ made such an agreement with you."

■ Plaintiff, in his individual capacity, replied, " * * * I cannot furnish you with the evidence you requested because that is my personal business and belongs strictly to me and not to Halbert-Williams & Company, Inc., or H. S. Sims." In view of the revealed willingness and anxiousness on defendant's part to obtain settlement of the account, and of plaintiff's refusal to cooperate in this regard, we are forced to conclude that˙ the above-recited argument of counsel, which is an appeal to equity, is without merit.

■ According to our view, the obligation of defendant in favor of Underwood and, by reason of the assignment, in favor of plaintiff herein, was a suspensive condition. It was not to take effect until the happening of an uncertain event, namely, the payment of the material account to defendant. "Conditional obligations are such as are made to depend on an uncertain event. If the obligation is not to take effect until the event happen, it is a suspensive condition." Civil Code, art. 2021. And an obligation contracted on a suspensive condition depending on a future uncertain event cannot be executed or enforced until after the occurrence of the event. Civil Code, art. 2043. If execution of the conditional obligation is demanded through suit before the condition has been fulfilled, such demand is premature and the action will be dismissed leaving the obligee his right to judicially assert his claim in due time. Code of Practice, art. 158. As the evidence in the instant case is conclusive that defendant's account has never been paid, it follows that plaintiff's demand on the conditional obligation is premature.

But counsel for plaintiff further state in their brief:

"We concede that plaintiff's suit was premature at the time same was filed and, had defendant properly pleaded to the suit, the trial judge's decision would have been

correct, regardless of the equities in plaintiff's favor. * * *

"Defendant filed no exception or pleas in this case either before or after issue was joined. The only pleading offered by defendant was its answer. Defendant set up in its answer alternatively that plaintiff's demands were premature. This was the only manner in which prematurity was raised."

"It is our contention that defendant has failed to properly raise the issue of prematurity, and that the Court is without authority to consider this issue. There is nothing before the Court on this issue at this time."

With reference to the quoted contention, the argument is advanced that prematurity of a claim must be pleaded by way of an exception in limine litis, and that failure in this respect is fatal and constitutes a permanent bar to the subsequent raising of such issue. In support of this, article 333 of the Code of Practice, as amended, by Act No. 124 of 1936, is relied on. This reads in part:

"Hereafter no dilatory exceptions shall be allowed in any case after a judgment by default has been taken; and in every case they must be pleaded in limine litis and at one and the same time, otherwise they shall not be admitted; nor shall such exceptions hereafter be allowed in any answer in any cause."

The plea of prematurity urged by defendant is not dilatory in nature and governed by the quoted codal provision. Dilatory exceptions are such as do not tend to defeat the action, but only to retard its progress. Code of Practice, art. 332. Defendant's objection purposes to destroy or defeat the instant action because of the nonoccurrence of the event on which the suspensive condition in question hinges. The matter of retarding its progress is not involved.

Also, numerous cases in the jurisprudence of this state are cited by counsel in fortification of their contention. Those authorities, we think, are not controlling or applicable here. The suggested doctrine was properly invoked in the cited cases because each involved what is known as a term for the performance of the obligation, and presented no suspensive condition. "The time given or limited for the performance of an obligation, is called its term." Civil Code, art. 2048. "A term may not only consist of a determinate lapse of time, but also of an event, provided that event be in the course of nature, certain; if it be uncertain, it forms a condition." Civil Code, art. 2049. "The term differs from the condition, inasmuch as it does not suspend the engagement, but only retards its execution." Civil Code, art. 2051. The instant case, obviously and as we have before stated, provides a condition. No term is here stipulated or present. Defendant's obligation is dependent upon the collection of its account, an event that is uncertain for it may never occur.

It is our opinion that prematurity must be pleaded in limine litis in those cases where the obligation sought to be enforced is existent and certain, and the term stipulated for its fulfillment or discharge has not matured. If, however, the obligation depends upon the happening of an uncertain event, and objection is urged to its enforcement or execution because of the nonoccurrence of that event, the resulting issue of prematurity properly belongs to the merits of the case. We think that the controversy under consideration falls within the last-mentioned classification, and it was proper for the prematurity of plaintiff's claim to be pleaded in defendant's answer.

A further argument by plaintiff's counsel is that, "any suit that plaintiff might bring in the future could always be defended on the same proposition which was urged here until prescriptive limitation forever bars his claim." The answer to this is that presently there is no unconditional obligation in plaintiff's favor, and prescription will not begin to run on his contingent claim until an obligation of that character arises and his right of action accrues.

The judgment of the trial court dismissing plaintiff's action as of nonsuit was, in our opinion, correct, and it is affirmed with costs.