118 So.2d 476 (1960)
Sid THOMAS, Plaintiff-Appellant,
v.
Laurie S. MOBLEY et al., Defendants-Appellees.
No. 4760.
Court of Appeal of Louisiana, First Circuit.
January 20, 1960.
Rehearing Denied March 21, 1960.
*477 J. D. DeBlieux, Baton Rouge, for appellant.
Taylor, Porter, Brooks, Fuller & Phillips, Robt. J. Vandaworker, Baton Rouge, Kearney & Kearney, New Roads, for appellee.
Before ELLIS, LOTTINGER, TATE, and JONES, JJ.
TATE, Judge.
Following the argument herein before us, we certified the question of the jurisdiction of this appeal to the Supreme Court. That tribunal concluded that we have appellate jurisdiction. Thomas v. Fidelity & Cas. Co., 237 La. 257, 111 So. 2d 105.
By this suit plaintiff claims damages (a) for the alleged desecration of a plantation graveyard in which his parents and other relatives were interred and (b) for the alleged denial of access to it for visitation and burial purposes. The owners of the land upon which the cemetery was situated, Laurie S. Mobley and his wife, were made defendants, together with their liability insurer. The Mobleys reconvened for damages sustained through allegedly defamatory statements contained in plaintiff's petition herein. A trial before a jury resulted in a judgment rejecting the plaintiff's demands and in an award of $1,000 to the defendants Mobley upon their reconventional demand. The trial court denied the plaintiff's motion for a new trial.
Plaintiff appeals the dismissal of his suit and the adverse award. Defendants-appellees answer the appeal and pray that the award upon their reconventional demand be increased and also that the judgment be amended so as to cast the plaintiff for costs.
The scene of this litigation is set in the Pike's Peak burial ground in Pointe Coupee Parish. This graveyard is located within the confines of the Belleview Plantation owned by the defendants Mobley. In March, 1956 Mobley secured the services of Ernest Gremillion, a contractor, to clear certain of his land including the *478 Pike's Peak burial ground.[1] As a result of this action, over forty relatives of persons interred in the burial ground brought suit for damages allegedly sustained thereby (see e. g., Hartford v. Mobley, 233 La. 956, 98 So.2d 250). The present is the first of these related suits to be tried.
The principal question of this litigation is whether the clearing of the graveyard constituted a desecration of the ancient Pike's Peak graveyard so as to entitle the plaintiff to damages.
As to the applicable law, it is conceded that, regardless of the title to the land itself, when a plot of ground is set apart and used for cemetery purposes, it becomes dedicated to use for such purposes; and that the descendants and near relatives of those interred therein are entitled to damages for profanation of these sacred grounds, as well as to injunctive relief to protect the graves and their burial and visitation rights related thereto. Humphreys v. Bennett Oil Corporation, 195 La. 531, 197 So. 222; 14 C.J.S. Cemeteries § 28, p. 87, § 29, p. 88, § 31, p. 91, § 36, p. 95; 10 Am.Jur. "Cemeteries" S. 6 (p. 489), S. 8 (p. 491), S. 29 (p. 507), S. 34 (p. 510), § 38 (p. 514). (While if the burial grounds are abandoned for such use they may lose their sacred and protected character, the defendants Mobley do not contend that the Pike's Peak cemetery was abandoned; and indeed, within the contemplation of the law, it was not. See 10 Am. Jur. "Cemeteries" Section 96, p. 512; 14 C. J.S. Cemeteries § 22b, p. 82; see, e. g.: Nichels v. Crouch, Tex.Civ.App.1951, 150 S.W. 2d 111; Magnolia Pipe Line Co. v. Leach, Tex.Civ.App.1929, 17 S.W.2d 471; cf., Touro Synagogue v. Goodwill Industries, 233 La. 26, 96 So.2d 29, where no burials had taken place for over 80 years and where there were no survivors from the immediate families of persons interred therein.)
The evidence reflects that, commencing in slavery days, a tract of about an acre in extent had been used for burial purposes by the colored families residing on or near the Belleview plantation. The previous landowners as well as the Mobleys had acquiesced in such use, although no formal dedication of the cemetery was ever recorded in the conveyance records.
In 1937 the Mobleys purchased the plantation within which the graveyard was situated. They moved to the plantation premises themselves in 1945. Relatives of those interred in the Pike's Peak Cemetery continued to be buried therein up to 1948, after which date no further interments took place.
A substantial preponderance of the evidence shows that by 1956 the graveyard, although readily distinguishable from the surrounding pasture, had become overgrown with briar and thickets and small trees; that, with at the most one or two exceptions, all of the wooden and tin grave markers had deteriorated and become displaced through action of the weather and of wandering cattle; and that some of the comparatively small number (nine to fifteen) of stone or marble tombstones had been knocked over or become obscured by the undergrowth. The plaintiff alleges that he and the other living relatives of those buried in the cemetery had been prevented from maintaining it by defendant Mobley's refusal to permit them to go upon his land. But there is substantial and preponderating evidence that the deteriorated condition of Pike's Peak Cemetery was evident before the Mobleys purchased the land, and that such is in fact a not unusual condition of plantation graveyards in the area.
Plaintiff alleges that the defendants Mobley desecrated the graves and destroyed the cemetery in order to convert it into a pasture for their own private use. In *479 support of these allegations, he produced evidence that while most of the tombstones were cast in a heap at the side of the graveyard (one of them cracked) a few others were scattered on the plantation road and in the debris from the clearing; that all the shade trees except one large gum and several small pecan trees had been knocked over and removed from the land; that following the clearing operations, two large piles of debris including fallen trees and scraped undergrowth were left piled definitely within the cemetery and another large pile was either within its northern end or just immediately north thereof; and that the land within the burial grounds had been torn up by the clearing operations.
In response to the defendants' claim that the operations were undertaken to clean and not to destroy the cemetery, able counsel for plaintiff points out that the three large piles of debris defacing its appearance were collected in March of 1956 and left on or near the premises thereafter, and that it was not until November of 1956 (or after suit was filed by the relatives of those interred) that the defendants offered by letter to plaintiff's counsel to clear the cemetery of such debris.
The substance of the defense offered by the defendants Mobley to the complaint of their alleged desecration of the graveyard is set forth as follows by Article 46 of their answer:
"Further answering said petition, defendants aver that at the time Laurie S. Mobley and Helen Nelson Mobley purchased Belleview Plantation in 1937, and at all times subsequent thereto until March of 1956, the cemetery or burial ground on said plantation was obviously neglected, uncared for and apparently abandoned by the survivors and relatives of the persons buried there although occasional burials were made in said cemetery or burial ground up to December of 1948. During said period, Laurie S. Mobley and Nelson Mobley often requested the colored people of the area to clear and clean the said cemetery or burial ground of the undesirable growth such as decayed and diseased trees, thorn trees, weeds, grass and undergrowth that had grown up over a period of many years, but said requests were made without avail for Laurie S. Mobley and Helen Nelson Mobley were never able to induce the colored people of the area to clean said cemetery or burial ground except to the extent necessary to excavate a grave on the few occasions in recent years when burials were made in said cemetery or burial ground. Therefore, Laurie S. Mobley became convinced that the colored people of the area, or the survivors or relatives of those buried therein, would never properly care for the cemetery or burial ground, or maintain it in a manner consistent with its character as a cemetery or burial ground. Having reached this conclusion, he determined to clear and clean the cemetery or burial ground of the tangled mass of said undesirable growth, and to thereafter maintain the said cemetery or burial ground in a manner consistent with its character as such. This course of action was discussed with several interested colored people of the area long prior to March, 1956, and was wholeheartedly approved by them. Therefore, in March of 1956, Laurie S. Mobley hired Ernest Gremillion to clear and clean said area with his caterpillar tractor. Before the said tractor was permitted to clear the said area, Laurie S. Mobley designated the desirable oak, gum and pecan trees which were to be left standing to beautify the said area. In addition, before the said tractor entered said area, Laurie S. Mobley made a map showing the location of the headstones and grave markers, about nine in number, and then removed or caused to be removed said headstones or markers to a safe place pending the clearing and *480 cleaning of said area. The area was then cleared by shearing all the undesirable growth at or above ground level without disturbing any of the graves and was completed except for removing one pile of the cleared material and replacing the headstones and gravemarkers. These matters were scheduled to be completed as soon as plantation operations permitted, but before they could be completed, numerous suits were filed by this plaintiff and other persons without prior notice to Laurie S. Mobley, Helen Nelson Mobley, Ernest Gremillion or any of the defendants named in said suits. Laurie S. Mobley offered, on November 16, 1956, to finish clearing and cleaning the cemetery or burial grounds, and in the alternative, invited this plaintiff and other persons who filed similar suits, to finish clearing and cleaning said cemetery or burial ground, but this plaintiff and other plaintiffs in similar suits have refused to agree to either proposed course of action."
According to the evidence produced by the defendants: For several years Mobley had sent word through his colored tenants and a church committee that he desired the graveyard to be cleaned, with no success. Before permitting the undergrowth in the graveyard to be sheared by the equipment of the contractor, he had mapped the location of all stone tombstones, which sketch was introduced into evidence. (Through the years, no wooden headstones had survived, and the tin gravemarkers were in deteriorated condition and scattered by the weather and wandering cattle; although these tin gravemarkers were likewise gathered with the stone tombstones). Before the equipment went into the graveyard, the tombstones were carried by hand and placed at the edge, to be kept for replacement later. Within the graveyard, there were no mounds of dirt, although there were several sunken places where graves were. The equipment used, specifically designed for the purpose, was a crawler tractor (the treads of which were designed not to tear up the land), especially equipped with a ground level shearing blade which would cut vines, briars, and other undesirable growth, as well as small trees, by shearing it at ground level, but without disturbing the surface of the soil.
Defendants' testimony also indicates that a large gum tree and a large oak tree, which were the only substantial shade trees in the lot, as well as nineteen small pecan trees, were marked before the clearing operations and were left standing after it. Several days afterwards, however, a hurricane (which the evidence shows did considerable other damage in the area) knocked over the large oak tree. Defendants' efforts to remove it prior to the litigation were unsuccessful due to the lack of suitable equipment.
As to the piles of debris: Defendant Mobley testified that, through a misunderstanding of his instructions by the tractor operator, the pile near the center of the cemetery of the burial ground was left around the remains of a large oak which had been knocked down by lightning prior to the clearing operations. Following the hurricane he had been unable to complete moving same because of other work around the premises and because the contractor thereafter had to leave for work elsewhere per prior agreement. He had intended, he said, to remove from the burial grounds both this pile of debris and the hurricane-fallen oak (which was the second pile of debris to which plaintiff's witnesses testified), and thereafter to replace the gravestones and to erect a monument memorial to those interred therein. (A letter of November, 1956, to plaintiffs was introduced tendering the removal of the debris, which offer was refused by plaintiff's counsel pending final settlement of the determination, and also because they feared that the equipment used would further desecrate the grounds.) The third pile of debris about which the plaintiff complained was shown by the defendants' testimony to be situated *481 north of the cemetery's northern limits and near the bayou bank.
Concerning the tombstones allegedly scattered indiscriminately on the road adjacent to or inside the burial grounds (two pictures of which were introduced by plaintiff, taken however, sometime after the clearing work was done), other witnesses for the defendants testified that they had inspected the premises immediately after the clearing operations, and also thereafter, and had not found the tombstones scattered so carelessly. It was suggested by them that some of the numerous plaintiffs who had filed suit for desecration of the graveyard (and who, it was averred, could with ease obtain access to the premises) may have deliberately manufactured such disarray from the allegedly formerly neatly stacked tombstones. Likewise, defendants' witnesses testified that a tombstone found in a pile of debris had not been there on the occasion of an earlier inspection.
A fairly great number of witnesses testified that they inspected the cemetery after the operations were completed and found that the surface of the land had not been disturbed, nor were any sunken graves covered over. Several testified that they were familiar with the appearance of the cemetery before and after the clearing operations, and that it was much improved.
In summary, the testimony produced on behalf of the plaintiff was to the effect that the clearing operations had torn up the old cemetery and left it defaced, with the tombstones scattered and broken and at least two unsightly piles of debris profaning the ancient burial grounds. This testimony was directly contradicted by that produced on behalf of the defendants, which was to the effect that the clearing operations were conducted with care and did not disturb the surface of the burial grounds nor destroy any graves and that the neatly piled tombstones and the two piles of debris were just temporarily left displaced pending termination of this lawsuit. The pictures introduced by the plaintiff showed the cemetery as unsightly; those by the defendants showed it to be beautified, save for the two piles of debris neatly collected and (allegedly) ready for removal. The plaintiff and his witnesses testified that the defendants Mobley had denied them access for visitation purposes and for burial of other members of their families near their other relatives; this the Mobleys denied, and they stated frankly that the purpose of the clearing operation was simply to clean for visitation and burial purposes for those with relatives buried therein. for visitation and burial purposes for those with relatives buried therein.
The determination of which set of opposing witnesses is testifying truly is primarily for the trier of fact, and the factual determinations of the trial court should not be disturbed upon review except in the case of manifest error. This principle of appellate review applies also to trials by jury, and it is further to be noted that the jury verdict herein was approved by the trial judge in his denial of the plaintiff's motion for a new trial. See Mire v. St. Paul Mercury Indemnity Co., La.App. 1 Cir., 103 So.2d 553; Baker v. United States Fire Ins. Co., La.App. 1 Cir., 89 So.2d 405; Futrell v. Pacific Indemnity Co., La.App. Orl., 79 So.2d 903.
We are unable to say that the trier of fact erred in accepting the testimony educed by the defendants. We may add that, although at the oral argument herein we were skeptical that such clearing operations could be undertaken without disturbing the ground surface of the cemetery and destroying the graves, the testimony of the many and responsible witnesses (corroborated by the defendants' photographs) that the clearing operations were accomplished without such ill effects affords substantial grounds and indeed preponderant testimony that such latter was indeed the case. It is quite probable that the widespread concern among the relatives of those interred in Pike's Peak Cemetery *482 shown by the record to have existed immediately following the clearing operations (few of whom however actually inspected personally the burial ground premises), similarly resulted sincerely from a visualization of the usual clearing operations conducted by a bulldozer by those similarly unfamiliar with the use of a crawler tractor and ground level shearing blade especially designed to avoid disturbance of the ground surface in such ground cleaning operations.
Accepting defendants' factual testimony as true, no legal authority is cited, and we are unable to hold as a matter of law, that such cleaning operations constituted a desecration of the burial grounds, taking into consideration that defendant Mobley first attempted without success to secure the cleaning of this eyesore on his land by the relatives of those buried therein, that he took pains to preserve the headstones and to map their location with the intention of reinstating them following completion of the operations, and that no graves were actually disturbed or destroyed. The mere action of using machinery to clear the cemetery, providing care was taken to preserve the gravemarkers and their locations, did not constitute a desecration, under the circumstances of this case. Had a body of hand labor been used instead, the process would have taken far longer, and would have similarly involved working operations over the numerous unmarked graves situated within the premises. Modern cemeteries use heavy mowing machinery to keep their premises tasteful and beautiful, and few if any object that to accomplish such purposes such machinery does of necessity pass over any graves marked merely by headstones.
In rejecting plaintiff's claim for damages for the alleged profanation of the cemetery and for denial of access thereto, the trier of fact must necessarily have accepted defendant Mobley's allegations and sworn testimony that this operation was intended to preserve and beautify, and not to desecrate, the sacred grounds and his further testimony that he did not object to continued use of this burial ground by those who had relatives buried therein. While plaintiff attacks this testimony as self-serving and merely to avoid the imposition of damages, by inference to be forgotten as soon as these judicial proceedings are terminated, we abide by the jury's determination that defendant Mobley testified truly, and indeed his words ring with apparent sincerity.
Because we feel that defendant Mobley's testimony was based upon such genuine and truthful intention, and because it would be inequitable to deny plaintiff recovery if as he alleges the testimony which defeated his claim is based upon temporary convenience rather than upon fact, we therefore feel that in the interests of justice the affirmance of this suit's dismissal should be without prejudice to plaintiff to reinstate this claim if, within a year of the final date of this judgment, defendant Mobley has not completed the restoration of the graveyard and the tombstones as promised by his testimony and as specifically tendered by his letter of November 16, 1956 offered into evidence as Mobley-6; and without prejudice to any claim for future denial of access to said cemetery. (The limits of the Pike's Peak burial ground are shown by Defendant Mobley's Exhibit 28, "D-M-28", a sketch drawn in his hand and by his actual measurements showing the location and measurements of said graveyard; which sketch is incorporated as an appendix to this opinion.)
The Reconventional Demand.
The defendants Mobley reconvened for the damages sustained through allegedly defamatory statements contained in the plaintiff's petition and through the widespread publicity given to them. The jury awarded these defendants $1,000 upon this reconventional demand.
These defendants by answer to the appeal pray that the award be increased. *483 Plaintiff filed an exception of no cause of action to this reconventional demand subsequent to the appeal, pursuant to the provision of Code of Practice Article 346 that peremptory exceptions founded on law may be pleaded at every stage of the proceedings prior to the definitive judgment.
The exception must be sustained, the judgment on the defendants' reconventional demand reversed, and the reconventional demand dismissed. A cause of action for damages for allegedly libelous statements set forth by the pleadings in a civil action does not arise until after final termination of such suit, and therefore a defendant cannot reconvene and claim from the plaintiff damages for an alleged libel set forth by the pleadings in the pending suit. W. B. Thompson & Co. v. Gosserand, 128 La. 1029, 55 So. 663; Wilson Sporting Goods & Co. v. Alwes, La.App. 1 Cir., 21 So.2d 102; see also: Cox v. Cashio, La. App. 1 Cir., 96 So.2d 872.
By supplemental brief the defendants-appellees urge that the objection to the reconventional demand was not timely urged and is deemed waived, since such objection is essentially a plea of prematurity which must be filed in limine litis. Code of Practice Articles 158, 333; Williams v. Washington Nat. Ins. Co., 180 La. 423, 156 So. 453.
We do not think that such argument has merit.
In the first place, the cause of action sought to be enforced by defendants' reconventional demand is not one which was in existence at the time of the judicial demand, and in which merely the right to enforce it had not yet accrued, so as thus to be the subject of a dilatory plea of prematurity which must under C.P. Art. 333 be filed in limine; it is instead a cause of action which would not come into existence until occurrence of some subsequent condition (namely, the successful termination of the suit by the defendants), and thus properly the subject of a peremptory exception as destroying and defeating rather than merely retarding the action. C.P. Arts. 332, 345; Halbert v. Klauer Mfg. Co., La. App. 2 Cir., 181 So. 75. Such an exception, founded on law, may be pleaded at any stage of the proceedings. Arts. 346, 902, C.P.
In the second place, replication and rejoinder are abolished in Louisiana, and the allegations and demands of defendants' answer are without special plea by the plaintiff open to any objections of law or fact by him. C.P. Article 329 and the jurisprudence thereunder; see 15 West's Louisiana Digest (1936), Pleading, and following.
Costs.
Defendants' answer to the appeal also prays that plaintiff, who filed suit in forma pauperis, be assessed with the costs. Even though plaintiff filed suit in forma pauperis, defendant is entitled to this relief. Coulon v. Anthony Hamlin, Inc., 233 La. 798, 98 So.2d 193. Exercising the power granted us by LSA-R.S. 13:4444 to tax the costs as deemed equitable by us, we think however that the costs should be paid one-half by the appellant and one-half by the appellees herein, since both the petition and the reconventional demand (upon which substantial evidence was also educed) are dismissed.
Decree.
The judgment dismissing plaintiff's demand is affirmed, without prejudice to plaintiff to reinstate the claim if, within a year of the final date of the present judgment, defendant Mobley has not completed the restoration of the graveyard (within the limits shown by Exhibit Mobley-28 attached hereto), and the tombstones as tendered by his letter on November 16, 1956 (Exhibit Mobley-6), and without prejudice to any claim for damages or other relief for future denial of access to said Pike's Peak burial ground. The judgment *484 in favor of the defendants upon their reconventional demand is reversed and annulled, and said claim is dismissed, likewise without prejudice to the reinstitution of same by the defendants Mobley after final termination of these proceedings. All costs of these proceedings are to be paid one-half by the appellant, one-half by the appellees.
Amended and affirmed.

*485 On Application for Rehearing.
PER CURIAM.
The defendants-appellees have filed an application for rehearing.
Insofar as the defendants-appellees complain about our affirmance of the dismissal of the suit being conditioned upon their completion of the restoration of the graveyard, we reiterate our acceptance of the sworn testimony by the Mobleys that they had intended to and did intend to restore the tombstones and to remove the pile of debris from the graveyard. If such testimony had not been sincere, then plaintiff was entitled to a judgment for damages, since the graveyard would have been desecreated by the defendants Mobleys' removal of the tombstones and by their collection of a pile of debris within its limits.
The defendants-appellees further contend that they should not have been taxed with one-half of the court costs. Our reason for doing so is that a substantial amount of evidence was introduced by the defendants which is totally irrelevant to the issue of whether there was or was not a desecration of the graveyard, but which was apparently introduced in support of the reconventional demand for damages on the ground that the suit was maliciously prosecuted. Since both the petition and the reconventional demand were dismissed, and since a substantial amount of evidence was introduced in support of both demands, we felt it to be proper and just to assess the court costs one-half to the plaintiff and one-half to the defendants.
However, we think that the Southern Farm Bureau Casualty Insurance Company has correctly pointed out by its application that the reconventional demand was filed by its insureds (the Mobleys) alone and not by it, and that such court costs (if to be assessed by reason of the dismissal of the reconventional demand) should be taxed to them individually and not to their insurer. Our decree will be amended accordingly, so as to tax the appellants with one-half the court costs and the defendants-appellees, Laurie S. Mobley and Helen Nelson Mobley, with the other one-half of the court costs, and so as to relieve their insurer of liability therefor.
Other contentions raised by the defendants-appellees' application for rehearing have been disposed of by our original opinion.
As amended to relieve the Southern Farm Bureau Casualty Insurance Company of any liability for court costs, our original decree is reinstated.
NOTES
[1] Gremillion was made defendant in a companion suit, Thomas v. Gremillion, reported at 118 So.2d 485.