Sargent CAUEFIELD

v.

The **FIDELITY AND CASUALTY COMPANY OF NEW YORK.**

Jim LUCAS and Sargent Cauefield

v.

**SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY.**

Civ. A. Nos. 1806, 1807.

United States District Court
E. D. Louisiana,
Baton Rouge Division.

Dec. 2, 1965.

J. D. DeBlieux, DeBlieux & Guidry, Baton Rouge, La., for plaintiffs.

Maurice J. Wilson, Breazeale, Sachse & Wilson, Baton Rouge, La., for the Fidelity and Casualty Co. of New York.

Robert J. Vandaworker, Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, La., for Southern Farm Bureau Casualty Ins. Co.

WEST, District Judge:

These cases, consolidated for trial, are before the Court on the motions of defendants, Fidelity and Casualty Company of New York and Southern Farm Bureau Casualty Insurance Company, to dismiss on the grounds of res judicata, judicial estoppel, and for lack of coverage under the policies of insurance issued by them to their respective assureds, Ernest Gremillion and Thomas Mobley. The motions pertaining to res judicata and judicial estoppel are based upon defendants' contentions that this matter has been completely and thoroughly tried and adjudicated in the State Courts of the

State of Louisiana, and that thus, all issues presently before this Court have previously been decided adversely to plaintiffs by a court of competent jurisdiction. While the Court is of the opinion that the technical requirements of a plea of res judicata as prescribed by the law of Louisiana have not been met, it does, however, conclude, for the reasons hereinafter stated, that the doctrine of judicial estoppel simply must be applied in this case in order to do substantial justice between these parties and to bring this litigation to an end once and for all.

In 1945, Mr. and Mrs. Thomas Mobley occupied Belleview Plantation in Pointe Coupee Parish, Louisiana, a property which they had acquired in 1937. Located on this plantation was an old cemetery or graveyard embracing about one acre of ground in which were buried the remains of various people who had, prior to their death, resided on or in the vicinity of Belleview Plantation. The last burial in the cemetery, known as Pike's Peak Cemetery, was apparently in the year 1948. In March of 1956, Mr. Mobley secured the services of one Ernest Gremillion, a dirt contractor, to clear certain of his lands, including the area containing the Pike's Peak Cemetery, which had become completely overgrown with briars, thickets, and small trees. After this clearing was completed, forty-one relatives of persons interred in Pike's Peak Cemetery filed twenty-six separate suits in the Eighteenth Judicial District Court for the Parish of Pointe Coupee, Louisiana, for damages, alleging desecration of the graveyard by Mr. Mobley and Mr. Gremillion. All of these plaintiffs were represented by the same attorney and all of the suits were filed in forma pauperis. Shortly after these suits were filed, the same attorney filed similar suits on behalf of the present plaintiffs, Cauefield and Lucas, who were also plaintiffs in the Pointe Coupee Parish suits, in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, Louisiana, and also filed similar suits on their behalf in this Court. He then filed another similar

suit in the Nineteenth Judicial District Court on behalf of one Sid Thomas, who had not filed suit in Pointe Coupee Parish. The two suits filed on behalf of Cauefield and Lucas in the Nineteenth Judicial District Court were subsequently removed by defendants to this Court, leaving only the Thomas suit pending in the Nineteenth Judicial District Court. In all of these cases, the issues were identical and the defendants in all cases were the same, i. e., either Mobley and Gremillion or their insurers, or both.

The defendants then moved to proceed with the Pointe Coupee Parish cases in order that all of the cases might be consolidated for trial. But when plaintiffs' attorney discovered that he would be unable to secure a transcript of the proceedings in that Court, (see Hartford, et al v. Mobley, 233 La. 956, 98 So.2d 250), he elected to try the Thomas case before a jury in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, Louisiana, a court wherein he could obtain a complete stenographic transcript of the entire proceedings for appellate purposes.

There is no actual evidence to support a finding that the attorneys in these cases formally agreed or stipulated to be bound in all of the various cases by the decision in the Thomas case, but this Court firmly believes that it was, in fact, the intention of counsel for all parties to be so bound by the decision in the Thomas case which had been selected as the vehicle by which all of the issues in these various identical claims were to be tried and resolved. Such a finding, however, is not necessary to a determination of the matter presently before this Court. The Thomas case was completely and throughly tried to a jury in a trial lasting nine days in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana. Following an adverse decision by the jury, the plaintiff Thomas appealed and, in accordance with Louisiana law, after a thorough review by the Court of Appeal on both the facts and the law, the case was again decided adversely to the

plaintiff. Thomas v. Mobley, et al., La. App., 118 So.2d 476 (1st Cir. 1960); Thomas v. Gremillion, et al., La.App., 118 So.2d 485 (1st Cir. 1960). It is important at this point to note that in the course of its decision, the Appellate Court, after reviewing both the facts and the law, concluded:

> "The principal question of this litigation is whether the clearing of the graveyard constituted a desecration of the ancient Pike's Peak graveyard so as to entitle the plaintiffs to damages. * * *
>
> "Accepting defendants' factual testimony as true, no legal authority is cited, and we are unable to hold as a matter of law, that such cleaning operations constituted a desecration of the burial grounds, taking into consideration that defendant Mobley first accepted without success to secure the cleaning of this eyesore on his land by relatives of those buried therein, that he took pains to preserve the headstones and to map their location with the intention of reinstating them following completion of the operations, and that no graves were actually disturbed or destroyed. The mere action of using machinery to clear the cemetery, providing care was taken to preserve the grave markers and their locations, did not constitute a desecration under the circumstances of this case. * * *
>
> "Because we feel that defendant Mobley's testimony was based upon such genuine and truthful intention, and because it would be inequitable to deny plaintiff recovery if as he alleges the testimony which defeated his claim is based upon temporary convenience rather than upon fact, we therefore feel that in the interest of justice the affirmance of this suit's dismissal should be without prejudice to plaintiff to reinstate his claim if, within a year of the final date of this judgment, defendant Mobley has not completed the restoration of the graveyard and

tombstones as promised by his testimony and as specifically tendered by his letter of November 16, 1956 offered into evidence as Mobley-6; and without prejudice to any claim for future denial of access to said cemetery. * * *" Thomas v. Mobley, La.App., 118 So.2d 476, 477.

And:

> "The preponderance of the evidence in the record demonstrates that this work was performed without disturbing any graves and that it, in fact, resulted as planned in a great improvement in the appearance of the cemetery." Thomas v. Gremillion, La.App., 118 So.2d 485, 486.

The completion of the restoration by defendants, as required by that judgment, was subsequently accomplished and approved by the same Court. Thomas v. Southern Farm Bureau Casualty Insurance Co., 154 So.2d 619 (1st Cir. 1963); Thomas v. Fidelity and Casualty Co. of New York, 155 So.2d 674 (1st Cir. 1963).

After all appellate procedures were exhausted and the Thomas case was finally terminated adversely to the plaintiff, the present plaintiffs, Cauefield and Lucas, through the same attorney who had represented Thomas in the State Court proceedings, moved to bring these present suits on for trial in this Court. All of the issues presented here are identical in every respect with the issues presented to the State Court in the Thomas case. The defendants in these cases are the same as those involved in the Thomas case. It is true that the plaintiffs here are not the identical parties named as plaintiffs in the Thomas case, but they are two of the forty odd persons who originally filed suit alleging the identical cause of action against the identical defendants as was tried in the Thomas case. And the similarity in the cases is even more striking when it is observed that while the plaintiffs here, Cauefield and Lucas, were not nominal parties in the Thomas suit, they were, nevertheless, extremely interested witnesses who actively participated in and testified during the trial on behalf of the plaintiff

Thomas. All of the testimony in support of their claim which they were then able to give or which they could not give was given by them during that trial. Indeed, this Court has been advised by counsel for the plaintiffs that there will be no substantial difference between the testimony offered in the Thomas case and that to be offered to this Court in the present case.

The issue before the Court in the Thomas case was whether or not the Pike's Peak Cemetery had been desecrated by Mobley and Gremillion during their cleaning operations. It was not necessary that the plaintiff in that case prove that the particular grave or graves occupied by the remains of his relatives had been desecrated in order for him to recover. It would have been sufficient had he been able to prove that any of the graves in the cemetery, or any part of the cemetery had been desecrated by the defendants. Hence, in order to try to prove desecration of at least some part of the cemetery, the plaintiff Thomas offered and produced the testimony of all of the various claimants who had filed suits and who could assist him in proving his claim. Two of those who testified pertaining to the graves occupied by their relatives, as well as to the condition of the entire cemetery, were the two plaintiffs here, Cauefield and Lucas. As pointed out by the Louisiana Court of Appeal in the Thomas case, they, together with all of the other claimants, were unable to prove that there was any desecration of the burial grounds or that any of the graves were in any way disturbed or destroyed.

Had the plaintiff Thomas, in the State Court suit, been able to prove that any grave, including the grave or graves of the relatives of Cauefield and Lucas, had been disturbed or desecrated, he, Thomas, could have recovered. As was stated by the Louisiana Supreme Court in the case of Humphreys v. Bennett Oil Corporation, 195 La. 531, 197 So. 222 (1940):

"The graves and tombs of plaintiffs' relatives were not physically disturbed, but other graves in the cemetery were. This is denied by some of defendant's witnesses, but it was proved to our satisfaction. There is testimony in the record that a marble slab, once used to mark the grave of a child, was placed at the door of the office building and used as a step.

"There is no merit in the contention that plaintiffs have no right of recovery in the absence of proof that the graves of their relatives and the monuments erected by them were physically disturbed; nor is there merit in the contention that the court has no right to consider the testimony admitted to show that other graves in the cemetery were in fact destroyed. This testimony was admissible to show the desecration generally of the entire cemetery. These plaintiffs have an interest not only in the particular spots where their relatives were buried, but also a sentimental interest, at least, in the cemetery as a whole, and therefore such flagrant violation, as here shown, of the sanctity of any part of this small plot was calculated to cause mental anguish and suffering to those who have relatives buried there."

Hence, the very same desecration or disturbance of any of the graves in the cemetery, or of any part of the cemetery that could have afforded a recovery on the part of Thomas in the State Court suit could also have been grounds for recovery on the part of the present plaintiffs, Cauefield and Lucas. But, after a complete trial in which Cauefield and Lucas both participated, and after an extensive appellate review of both the facts and the law, no such desecration or disturbance was found to exist as to any grave or as to any part of the cemetery. It was also conclusively determined by that Court that none of the various claimants had ever been denied access to the cemetery. Hence, all possible issues that could be presented in this case in support of the present plain-

tiffs' claims were presented in the suit by Thomas, in which the present plaintiffs participated as active, interested witnesses in the State Court.

■ Plaintiffs argue that the doctrine of judicial estoppel is not applicable to a case where the parties to the two cases involved are not identical, and cite as authority therefor the cases of Roucher v. Traders and General Insurance Company, 235 F.2d 423 (CA5 1956); Horton v. United Services Automobile Association, 218 F.2d 453 (CA5 1955); and Murphy v. McLoughlin, 247 F. 385 (CA5 1918). This Court is not unmindful of the general rule of law in Louisiana that the plea of judicial estoppel cannot ordinarily be urged against one who was not a party to the prior case. But the Court is also aware of the exceptions that have been recognized, and wisely so, to this rule. For example, in McKnight v. State, La.App., 68 So.2d 652 (1st Cir. 1953), the issue was whether or not a decision rendered in the Ninth Judicial District Court for the Parish of Rapides, Louisiana, holding that three state troopers were not negligent could be used to estop the plaintiff from bringing another action arising out of the same accident against the State of Louisiana. The First Circuit Court of Appeal held that the State of Louisiana could use as a defense the decision of the Ninth Judicial District Court holding that the state troopers were not negligent. In Williams v. Marionneaux, 240 La. 713, 124 So.2d 919 (1960), the Supreme Court of Louisiana held that a settlement entered into between a plaintiff and a defendant's employee were not res judicata, but "a plea in bar of judicial estoppel would have been appropriate procedurally." The Court in that case dismissed the suit against the employer. See also Johnson v. Continental Casualty Co., 183 La. 1042, 165 So. 194 (1936); Bowman v. Liberty Mutual Insurance Company, 149 So.2d 723 (1st Cir. 1963).

The cases cited and relied upon by the plaintiff are easily distinguishable from the present situation. For example, in Murphy, the wife contended that a judgment in the state court had allowed her interest on a principal claim against her husband's estate, and that this judgment should preclude a bankruptcy court from disallowing the interest claimed. The Court of Appeal properly stated:

"However, there was no contestation, either in the civil district court or in the Court of Appeal, or in the Supreme Court, as to whether interest was properly allowable or not. It was not a controverted issue between the parties, before the rendition of judgment, and in no true sense can it be said to have been actually litigated in the state court. No mention of the question of interest, other than in the amended judgment of the Court of Appeal, appears in the opinions of the state courts. * * * *"

Both Roucher and Horton involved claims growing out of automobile accidents and are obviously not determinative of the present case. In automobile cases the Court must decide as to each claimant questions pertaining not only to negligence but also to contributory negligence. One plaintiff may be entitled to recover from a negligent defendant while another, because of his own contributory negligence, may be denied recovery. The mere fact that an accident occurs injuring one plaintiff does not necessarily mean that another plaintiff was also injured as a proximate result of the defendant's negligence. But in a case involving a small cemetery such as here involved, if desecration of any of the graves or of any part of the cemetery was caused by the acts of these defendants, then, in such event, all of the close relatives of those there interred would necessarily have been damaged. Humphreys v. Bennett Oil Corporation, supra.

The doctrine of judicial estoppel is in no sense foreign to Louisiana law. It was introduced into Louisiana as early as 1882 in the case of Heroman v. Louisiana Institute of Deaf and Dumb, 34 La. Ann. 805. And more recently, in California Company v. Price, 234 La. 338, 99

So.2d 743 (1957), the Louisiana Supreme Court said:

> "The State seems to be under the impression that the common law doctrine of judicial estoppel is not recognized in this State but the cases herein referred to have recognized and applied that doctrine. The State is under the impression that the cases of Buillard v. Davis, [185 La. 255, 169 So. 78] supra, and Heroman v. Louisiana Institute, [34 La.Ann. 805] supra, were expressly overruled in the Quarles case. [226 La. 76, 75 So.2d 14.] They rely on a footnote in the Quarles decision which they say rules the above referred to cases. It is stated in the footnote that these cases appear to be out of line with the rest of the jurisprudence but it was never the intention of this Court to overrule those cases. In fact, the doctrine of judicial estoppel was specifically recognized in the Quarles case."

▇ In the present case, as in the Thomas case, the only question at issue is whether or not the defendants desecrated any of the graves in, or any part of Pike's Peak Cemetery. If they did, then the plaintiffs in the Thomas suit, as well as the plaintiffs here, were thereby damaged. If they did not, neither the plaintiff Thomas, nor the plaintiffs in this suit were damaged. This question has been fully litigated in the Thomas suit and even though plaintiffs here were not nominal parties to that suit, their rights have, under the circumstances, been litigated and determined, just as thoroughly and completely as if they had been named as plaintiffs therein. Under the particular circumstances of this case, the Thomas suit can be likened to a class action wherein a determination of the rights of one member of the particular class involved is a determination of the rights of the remaining members of the class, all of whom are similarly situated. By admissions of counsel, the plaintiffs here can present no testimony other than that which was presented in the Thomas suit. Under the circumstances of this case, wherein the facts are admittedly the same as in the Thomas case, the rights of Thomas and of the present plaintiffs, Cauefield and Lucas, are identical in every respect. These rights have been fully adjudicated and the results are final as to all persons similarly situated.

It would indeed be a travesty on justice in a situation such as this to force these defendants to defend themselves forty times over on the very same issues, when it is admitted by the plaintiffs that there is no new evidence to be produced and when all crucial issues common to all claims have been clearly and decisively adjudicated after a fair and thorough trial by a court of competent jurisdiction. The Trial Court journeyed to the scene of the property in question to view it first hand and the State Court of Appeal thoroughly reviewed both the facts and the law. The final decision was adverse to the plaintiff Thomas, and it must now be held to be adverse to the claims of others similarly situated. After some nine years of legalistic maneuvering and litigation, this matter must now be terminated. If ever there was a case which demanded the application of the equitable doctrine of judicial estoppel, this is it. Its application to this case does no violence to Louisiana law. On the contrary, its recognition here and now is both necessary and proper in order that substantial justice might be done. In view of this holding the Court does not reach the policy coverage question, and for the reasons herein stated, the motions of defendants to dismiss will be granted and plaintiffs' cases will be dismissed. Judgment will be rendered accordingly.