Dear Ms. Zeringue:
You have requested an opinion from this Office related to the interactions among the general Louisiana cemetery law (La.R.S. 8:1, etseq.), the Louisiana Unmarked Human Burial Sites Preservation Act ("Unmarked Burials Act") (La.R.S. 8:671, et seq.) and various planned or proposed Federal Emergency Management Agency ("FEMA") activities in post-Katrina New Orleans under the Stafford Act (42 U.S.C. § 5121, etseq.). Your request, which includes the numerous subparts set forth below, relates primarily to the following general factual scenario:
[FEMA] may provide funding for undertakings that are located on or in an area of an unmarked human burial or burials that will be funded by the 404 Program of the Hazard Mitigation Grant Program (HMGP) under the . . . [Stafford Act]. These undertakings are likely to occur on privately-owned, residential property.
In light of the general requirements that FEMA is bound to follow, in many cases, the applicable laws of the State in which it is operating, you have asked the following eight questions about Louisiana's cemetery laws.
1. FEMA anticipates that it will be asked to fund the repair or construction of facilities that do not conform to cemetery uses and are located on a property containing a known family burial plot or an unmarked human burial. What is a reasonable way to determine the "immediate area where one or more human skeletal remains are found" as provided in La.R.S. 8:673 and establish a minimum acceptable buffer between a facility with a non-conforming use and the cemetery property? *Page 2 
2. Is a property owner required to seek removal of dedication for a portion of a property pursuant to La.R.S. 8:306 prior to constructing or repairing a facility that does not conform to a cemetery use if the facility will be located on a portion of the property outside of the immediate area of the cemetery or a known site with an unmarked human burial or burials but on land included in the title description for the property as it was recorded in the public records?
3. FEMA requires its applicants and subgrantees to conform to all federal and State laws. FEMA anticipates that it will receive requests for the reimbursements of the costs associated with the post-Katrina/Rita reconstruction of facilities on private property that do not conform to cemetery uses that will be sited on or near their pre-Katrina locations and are in the immediate area of known unmarked human burials. Is there an exception in the Cemetery Act that allows for the reconstruction of damaged nonconforming facilities on private property in the immediate area of a cemetery property?
4. Is the use of a facility constructed before the passage of the Cemetery Law in 1974 on a property that was once used as a cemetery "grandfathered" if the facility has continually remained in service, except for the few months immediately following Hurricanes Katrina and Rita? Would the facility be treated differently if it was constructed after the passage of the Cemetery Law? Can the use of a "grandfathered" facility be changed? Can such a facility be expanded? Would an expansion be acceptable if it does not require ground disturbance? What steps, if any, must FEMA require an applicant to take in order to ensure that the "grandfather" exception applied before FEMA approves funds for repair or expansion?
5. Can a FEMA applicant complete the construction or repair of a facility following the discovery of unmarked burial sites, human skeletal remains, or burial artifacts during construction if the provisions of the Unmarked Human Burial Sites Preservation Act are met and it is feasible to restore the burial site and avoid further disturbance of the human skeletal remains or burial artifacts, or is it necessary to first remove all human skeletal remains and request removal of the cemetery dedication through a court of competent jurisdiction prior to completing the project?
6. Do the provisions of the Cemetery Law apply if the remains of Hurricanes Katrina and Rita victims are discovered in the debris of a destroyed facility during the reconstruction or repair of the facility?
7. Who has jurisdiction over human skeletal remains from an unmarked burial site if they are less than fifty years old and are not the subject of a criminal investigation or legal inquiry? *Page 3 
8. Do the provisions of the Cemetery Law, such as the cemetery dedication, apply to a property if discovered buried human skeletal remains are removed from the property by the local law enforcement agency and will be treated as a criminal investigation or legal inquiry by the coroner?
Because each one of the above questions requires the analysis of disparate Louisiana laws and because the answers to each question are not necessarily dependant on the answers to any other question, they are each considered separately below.
1. What is a reasonable way to determine the "immediate area where oneor more human skeletal remains are found" as provided in La.R.S. 8:673and establish a minimum acceptable buffer between a facility with anon-conforming use and the cemetery property?
This office is aware of no specific legal guidance to determining the "immediate area" around human burials under La.R.S. 8:673. The legal provision to which you refer, La.R.S. 8:673, is a part of the Unmarked Burials Act. Neither that Act nor Louisiana cemetery law in general provides any guidance as to what the term "immediate area" means.[1] In addition, Louisiana law does not provide for nor does it require a buffer around burials or burial sites and nonconforming uses.[2] In this regard, it is the opinion of this office that questions related to what is the "immediate area where one or more human remains are found," in the absence of a specific legal definition of the term "immediate area," should be left to scientific determinations of potential impacts to any nearby burials. In other words, when considering what the appropriate buffer around human burials should be, this office is of the opinion that as long as the extent of the burial area is known (either through documentary evidence or through archaeological or remote sensing methods) an archaeologist can determine what a reasonable buffer would be in order that the burials are not impacted by any current or proposed activities nearby. It is our opinion that such a determination would satisfy the requirements of La.R.S. 8:673.
If, however, burials are anticipated to be impacted by any current or proposed activities, compliance with both the Unmarked Burials Act (i.e., submitting to the permitting process set forth therein) and the cemetery dedication provisions of La.R.S. 8:304-306 (discussed further below) would be required.[3] However, it is *Page 4 
important to note that, as we opined in La. Atty. Gen. Op. No. 08-0100, the removal of the dedication for cemetery purposes need not be undertaken for an entire cemetery if the entire cemetery is not going to be impacted. The dedication need only be removed for the area that is going to be impacted by any current or proposed activities. Id.[4]
 2. Is a property owner required to seek removal of dedication for aportion of a property pursuant to La.R.S. 8:306 prior to constructing orrepairing a facility that does not conform to cemetery use if thefacility will be located on a portion of the property outside of theimmediate area of the cemetery or a known site with an unmarked humanburial or burials but on land included in the title description for theproperty as it was recorded in the public records?
There is no clear legal requirement for such a removal under Louisiana law with one possible exception. In cases where the property in question has been legally recorded, either under La.R.S. 8:304(B)[5] or simply under general rules related to *Page 5 
recordation, as "cemetery property" but has never been used for the interment of human remains, it is our opinion that there is prima facie
evidence of the presence of human remains on the property. In that event, it is further our opinion that La.R.S. 8:306 would require the removal of the explicit, recorded cemetery dedication provided for under that statute. Should there in fact be no burials in a particular area in which a dedication is in effect, but in which a nonconforming use is undertaken, it is our opinion that such an action would be a technical violation of the dedication provisions in the absence of the removal of a dedication from the property.
Although, beyond the one above-noted exception concerning recordation, there is no legal requirement to remove a cemetery dedication in the clear absence of human burials, in an abundance of caution and to ensure that the subject property has clear title — free from any defects that may result from an erroneous classification of the property as cemetery property — we recommend that, when faced with an unrecorded cemetery or a known unmarked human burial, La.R.S. 8:306 should be followed. If it is known that there are no burials present on the subject property, La.R.S.8:306 would be a simple transaction before the proper court — one that would likely save the fee title owners potential problems in the future if any confusion arises as to the actual location of burials in relation to the subject property.[6]
 3. Is there an exception in the Cemetery Act[7] that allows for thereconstruction of damaged non-conforming facilities on private property[8] in the immediate area of a cemetery property?
For the purposes of this question, it is our opinion that activities in the "immediate area" of cemetery property are controlled by our answer to Question 1 related to buffers. For all dedicated cemeteries under La.R.S. 8:304-306 (i.e., not the *Page 6 
"immediate area", but rather the actual cemetery), there is no such exception under Louisiana law. In our opinion, it is of no moment that at some time in the past, a nonconforming use once existed on dedicated cemetery property.[9] Under the current law, which was codified in 1974, [10] which was jurisprudentially recognized at least as early as 1940, [11] and which was likely custom long before 1940, [12]
nonconforming uses of dedicated cemetery property are not permitted under Louisiana law.[13] Thus, it is our opinion that once a nonconforming use is no longer used or usable for its originally intended purpose (i.e., once it has to be partially or wholly reconstructed in order to function again), compliance with the dedication provisions is mandatory before any such reconstruction can begin.
4.a. Is the use of a facility constructed before the passage of theCemetery Law in 1974 on a property that was once used as a cemetery"grandfathered" if the facility has continually remained in service,except for the few months immediately following Hurricanes Katrina andRita?
In a footnote in La. Atty. Gen. Op. No. 10-0018, we stated the following:
It is also important to point out that, although the dedication of property to cemetery uses is an ancient legal concept, there have been, over time, many violations of this concept. However, nonconforming uses of cemetery property that predate the codification of this concept by the Louisiana Legislature in 1974 are likely "grandfathered" into compliance with current Louisiana law. In other words, notwithstanding any other law to the contrary, constructions on dedicated cemetery property pre-1974 are likely not violations of the law.
It is important to note that this statement was not part of the substantive opinion of this Office in La. Atty. Gen. Op. No. 10-0018. Rather it was simply dicta that was tangentially related to the substantive questions at issue therein. Now that the substance of that footnote has been presented as a formal question to this *Page 7 
Office through the current opinion request, we must modify that former dicta in light of the more comprehensive analysis contained, infra.
It is our opinion that there is no "grandfathering" contemplated under Louisiana law allowing a nonconforming use to be considered as a conforming use merely because it predated the codification of the dedication provisions in 1974. In other words, because we are of the opinion that there is no exception to the dedication provisions and because the dedication provisions existed as binding case law and custom prior to 1974, we conclude that nonconforming uses cannot be "grandfathered" into conformance.[14]
We acknowledge the scenario with regard to currently existing nonconforming uses. If a nonconforming use was constructed, innocently or not, on dedicated cemetery property, it is a violation of La.R.S. 304-306 and the antecedents to those laws. However, if the nonconforming use is a permanent or semi-permanent structure, it may now be virtually impossible to remove the nonconforming use (especially if that nonconforming use is still in use). In addition, in many cases (especially those cases where there is no record of the existence of a cemetery or burial), the construction of a nonconforming use may have obliterated any evidence of the existence of a cemetery on the property.[15] These realities create obvious enforcement problems, making the removal of nonconforming uses under many circumstances virtually impossible.
However, when, as in the situations presented by your opinion, the nonconforming uses have ceased and must undergo reconstruction to be fit for any future use, it is easier to enforce the law and remove the nonconforming use. In other words, when it is known or likely that a cemetery or human burials have been subject to a nonconforming use, such nonconforming use should be removed, if practicable, subject to the applicable requirements of the Unmarked Burials Act.[16] *Page 8 
 4.b. Would the facility be treated differently if it was constructedafter the passage of the Cemetery Law?
Because we have opined, in answer to question 4.a. of this opinion, that construction before the codification of the dedication provisions in 1974 still requires conformance with a cemetery use, it is our further opinion that a post-1974 nonconforming use would be treated no differently than one occurring prior to 1974. In both instances, the use is nonconforming and is not permissible under the law.
4.c. Can the use of a "grandfathered" facility be changed?
Because we have above opined that there is no "grandfathering" under Louisiana law for nonconforming uses of dedicated cemetery property, it is our opinion, with one caveat, that a nonconforming use cannot be changed. In our opinion, the only acceptable change in use of a nonconforming structure under the dedication provisions would be to discontinue the nonconforming use. In this regard, it is our opinion that, absent a removal of the cemetery dedication, any currently nonconforming use could be converted to a cemetery use either in the form of a mausoleum or similar structure or a structure intended to service the continued use or maintenance of the property as a cemetery.[17]
 4.d. Can such a facility be expanded?
For any existing nonconforming facility to be expanded, it is our opinion that several requirements must be met. First, if the cemetery dedication is to be removed, compliance with both La.R.S. 8:304-306 as well as the Unmarked Burials Act is required: A permit would have to be secured from the Division of Archaeology ("Division") under La.R.S. 8:671,et seq., and, following the scientific removal of human remains under those laws, a petition to remove the cemetery dedication from the property must be submitted to and approved by a court of competent jurisdiction. To expand the existing nonconforming use, the removal of remains under the Unmarked Burials Act and the removal of the cemetery dedication must extend to the area slated for expansion as well as to the footprint of the existing nonconforming use.
Second, if the cemetery dedication is not to be removed, as noted above, the only acceptable expansion of a nonconforming use would be to create a structure that is intended to be used for "cemetery purposes" under La.R.S. 8:306. However, as we have noted previously, compliance with the dedication provisions in unmarked cemeteries (as defined in La.R.S. 8:673(5) and as interpreted in La. Atty. Gen. Op. No. 08-0135) also requires compliance with the *Page 9 
Unmarked Burials Act (i.e., the application for a permit from the Division). Upon compliance with both of these laws, expansion of a nonconforming use would be permissible in the "cleared"[18] area, as that area would no longer be considered a cemetery for the purposes of La.R.S. 8:304-306.
4.e. Would an expansion be acceptable if it does not require grounddisturbance?
The answer to this question hinges on a distinction between the dedication provisions of La.R.S. 8:304-306 and the Unmarked Burials Act. If no ground disturbance is to occur, it is our opinion that, unless there is surface evidence of the cemetery (i.e., grave markers, etc.), and no adverse impacts are anticipated from the solely surface activity at the site, the Unmarked Burials Act is not triggered. However, the same is not true for the dedication provisions. As noted above, unless and until human remains are properly removed from an area, that area's use is limited to activities that are consistent with a "cemetery purpose" under La.R.S. 8:306. Thus, it is our opinion that an expansion that does not cause ground disturbance would still be a violation of La.R.S. 8:306, absent a removal of the cemetery dedication pursuant to that law.
4.f. What steps, if any, must FEMA require an applicant to takein order to ensure that the "grandfather" exception applied beforeFEMA approves funds for repair or expansion?
Based upon our previously-stated opinions herein, this question is moot. Because there is no "grandfather" exception to the dedication provisions under La.R.S. 8:304-306, it is our opinion that, when human remains are at issue in a proposed project, FEMA only needs to comply with the dedication provisions and the Unmarked Burials Act.
5. Can a FEMA applicant complete the construction or repair of afacility following the discovery of unmarked burial sites, human skeletalremains, or burial artifacts during construction if the provisions of theUnmarked Human Burial Sites Preservation Act are met and it is feasibleto restore the burial site and avoid further disturbance of the humanskeletal remains or burial artifacts, or is it necessary to first removeall human skeletal remains and request removal of the cemetery dedicationthrough a court of competent jurisdiction prior to completing theproject? *Page 10 
In response to this question, we refer you to La. Atty. Gen. Op. No. 10-0234 (footnotes included, but renumbered from original opinion), in which we have opined as follows:
[O]nce human remains have been interred in a piece of property, that property is forever dedicated as a cemetery.[19] In addition, such property cannot be put to any use other than a "cemetery use" unless and until any and all human remains have been removed from the property and a court of competent jurisdiction issues an order removing the dedication.[20]
Accordingly, it is our opinion that compliance with the Unmarked Burials Act alone does not obviate the need to remove the cemetery dedication on a particular piece of property. Compliance with the Unmarked Burials Act, pursuant to a properly-issued permit, ensures, from a scientific/archaeological perspective, that the archaeological resources represented by the human remains, burial artifacts, and burial sites are protected and/or properly analyzed and removed. In some instances, this may amount to leaving human remains in the ground when avoidance of disturbance is the appropriate course of action according to the Division.[21] However, it is our opinion that, because the dedication provisions are absolute, the cemetery or burial in question would either have to be avoided or removed and a court of competent jurisdiction would have to issue a judgment pursuant to La.R.S. 8:306 for compliance with Louisiana law to be complete.
6. Do the provisions of the Cemetery Law apply if the remains ofHurricanes Katrina and Rita victims are discovered in the debris of adestroyed facility during the reconstruction or repair of the facility?
It is our opinion that the laws that are the subject of this opinion request, namely the dedication provisions and the Unmarked Burials Act, are not implicated when *Page 11 
the remains of modern disaster victims are encountered during reconstruction or debris operations. These provisions of Louisiana law contemplate the intentional interment, inurnment, or placement of human remains for the purposes of final disposition.[22] The scenario contemplated by this question, in our opinion, is more analogous to a crime scene situation (which is discussed more fully, infra) and should be dealt with accordingly.[23]
 7. Who has jurisdiction over human skeletal remains from an unmarkedburial site if they are less than fifty years old and are not the subjectof a criminal investigation or legal inquiry?
It is apparent from the wording of this question that you are referring to the following language from the Unmarked Burials Act, specifically La.R.S. 8:680(C) and (D), which state:
C. Each law enforcement agency that receives notice of an unmarked burial site or human skeletal remains shall immediately notify the coroner of the parish where the site or remains are found. The law enforcement agency shall also notify the secretary through the division of archaeology within two business days of any discovery unless circumstances indicate that the death or burial is less than fifty years old or that there is need for a criminal investigation or legal inquiry by the coroner.
D. If the coroner finds that the unmarked burial site is over fifty years old and that there is no need for a legal inquiry by his office or for a criminal investigation, the secretary shall have jurisdiction of the site, human skeletal remains, and the burial artifacts.
These portions of the Unmarked Burials Act set the threshold age of a burial for coverage by the jurisdiction of the Division at fifty years or older.[24] In the event that an unmarked burial is determined not to be fifty years old and it is also determined that there is no "need for a criminal investigation or legal inquiry by the coroner,"[25] it is our opinion that such remains must be handled in accordance with the general provisions of La.R.S. 8:655[26] if the remains are identifiable and *Page 12 
have, in fact, been identified. Because the Division has no jurisdiction over such recent human remains, it is our opinion that these remains would be under the jurisdiction of the coroner unless and until a proper identification has been made such that the provisions of La.R.S. 8:655
may be applied. In the event that no such identification is possible or that the remains are otherwise unclaimed, it is the opinion of this Office that the default legal provisions related to the burial of paupers, La.R.S. 33:1565, would apply. That law provides, in pertinent part, as follows:
A. (1) Upon completion of an autopsy or completion of the coroner's investigation, if the investigation reveals that an autopsy is not required, the coroner shall release the body to the family or friends for burial.[27]
(2) The coroner shall arrange for the burial of paupers, preferably by a Louisiana licensed funeral home. The burial expenses shall not exceed the actual cost of the service, and shall be paid by the parish or municipality in which the death occurred. . . . The state or any municipality or parish may establish a maximum amount which it shall pay for individual burial expenses.[28]
Thus, in answer to your question, it is the opinion of this Office that, should human skeletal remains be identified that are less than fifty years in age, [29] such *Page 13 
remains are not within the ambit of the Division and the Unmarked Burials Act. Rather, they are under the jurisdiction of the local coroner who has the duty to either dispose of those remains pursuant to La.R.S. 8:655 (if the individual can be and is positively identified) or pursuant to La.R.S. 33:1565 (if the individual is unidentifiable, unclaimed, or a pauper).[30]
 8. Do the provisions of the Cemetery Law, such as the cemeterydedication, apply to a property if discovered buried human skeletalremains are removed from the property by the local law enforcement agencyand will be treated as a criminal investigation or legal inquiry by thecoroner?
The law does not speak directly to this question. However, it is clear from an in pari materia reading of the law related to cemetery dedication and the Unmarked Burials Act that the Legislature did not intend for crime scenes in Louisiana to inadvertently become dedicated cemetery property.
As noted above, the basic idea of cemetery dedication derives from La.R.S. 8:304-306. These provisions, when read together, suggest that the Legislature intended for the dedication to apply to intentionally-created cemeteries.[31] Thus, it is our opinion that a dedicated cemetery is not created when human remains are discovered, but later are removed as part of an isolated criminal investigation. This is further supported by the Unmarked Burials Act, which, through La.R.S. 8:680, places the original jurisdiction for inadvertent discovery of human remains within the ambit of law enforcement entities. Only after a determination is made that a criminal investigation or legal inquiry is unnecessary is the jurisdiction over such remains (or the site, generally) transferred to the Division. Thus, based upon this statutorily-required series of events, it is our opinion that, if the location of human remains is under a criminal investigation or legal inquiry, [32] unless and until the matter is referred to the jurisdiction of the Division based upon a *Page 14 
coroner's ultimate determination that the site is not a crime scene, the site remains a crime scene and not a dedicated cemetery.[33]
Summary
Due to the length and complexity of this opinion, we here provide the following brief recapitulation of our major conclusions, which are fully analyzed above:
• We are aware of no specific legal guidance to determining what constitutes the "immediate area" around human burials under La.R.S. 8:673. In the absence of a specific legal definition of that term, the question of what constitutes a reasonable buffer around human burials such that any proposed activity will not adversely impact the remains is a scientific one, the answer to which should be determined by a qualified archaeologist.
• There is no legal requirement to remove a cemetery dedication from an area that does not actually contain human remains, with the following qualification: If the subject area has been included in a recorded cemetery or otherwise shown to be within a cemetery area on historic or modern documents or maps, even if no human remains are actually present, La.R.S. 8:306 mandates the removal of the cemetery dedication. Further, we recommend that, when in close proximity to a cemetery or to known unmarked human burials, La.R.S. 8:306 should also be followed.
• There is no exception in Louisiana law to allow for the reconstruction of a nonconforming use on dedicated cemetery property. If such a use exists, once the nonconforming use is no longer used or usable for its originally intended purpose, compliance with La.R.S. 304-306 is mandatory before any reconstruction can begin.
• Because there is no exception to the dedication provisions (La.R.S. 8:304-306) and because the dedication provisions existed as binding case law and custom prior to 1974, we conclude that nonconforming uses cannot be "grandfathered" into conformance.
• A nonconforming use constructed subsequent to the Cemetery Act in 1974 would be treated no differently than one constructed before 1974. *Page 15 
• The only acceptable change in use of a nonconforming structure under the dedication provisions would be a change that brings the new use into compliance with the dedication provisions, which would be a use for "cemetery purposes" under La.R.S. 8:306.
• A nonconforming use may only be expanded by a removal of the cemetery dedication and, if applicable, compliance with the Unmarked Burials
Act.
• Compliance with the Unmarked Burials Act alone does not obviate the need to remove the cemetery dedication on a particular piece of property.
• The dedication provisions and the Unmarked Burials Act are not implicated when the remains of modern disaster victims are encountered during reconstruction or debris operations.
• Human skeletal remains that are less than fifty years in age are not subject to the jurisdiction of the Division of Archaeology or the Unmarked Burials Act. Such remains are within the jurisdiction of the local coroner who has the duty to dispose of those remains pursuant to La.R.S. 8:655 or La.R.S. 33:1565, whichever is applicable.
• The Legislature did not intend for crime scenes to inadvertently become classified as dedicated cemetery property simply by virtue of the discovery of human remains.
We hope this sufficiently answers your inquiry; however, if we may be of further assistance please do not hesitate to contact our office.
 Sincerely yours,
 JAMES D. "BUDDY" CALDWELL
 ATTORNEY GANERAL
 By:___________________
 RYAN M. SEIDEMANN
 Assistant Attorney General
 JDC/RMS/tp
[1] No regulations have ever been promulgated under the Unmarked Burials Act. Thus, in addition to the lack of any guidance from the law itself, there are also no regulations concerning this question.
[2] For the purposes of this opinion, the term "conforming use" is synonymous with the term "cemetery purposes" as that term is used in La.R.S. 8:306.
[3] The dedication provisions, La.R.S. 8:304-306, read as follows:
§ 304. Permanency of dedication
A. After property is dedicated to cemetery purposes pursuant to this Chapter, neither the dedication nor the title of a plot owner shall be affected by the dissolution of the cemetery authority, by nonuse on its part, by alienation of the property, or otherwise, except as provided in this Title.
 * * *
§ 305. Rule against perpetuities, etc., inapplicable
Dedication to cemetery purposes pursuant to this title is not invalid as violating any laws against perpetuities or the suspension of the power of alienation of title to or use of property but is expressly permitted and shall be deemed to be in respect for the dead, a provision for the interment of human remains, and a duty to and for the benefit of the general public.
§ 306. Removal of dedication; procedure
Property dedicated to cemetery purposes shall be held and used exclusively for cemetery purposes unless and until the dedication is removed from all or any part of it by judgment of the district court of the parish in which the property is situated in a proceeding brought by the cemetery authority for that purpose and upon notice of hearing to the board and by publication as hereinafter provided, and proof satisfactory to the court: (1) That no interments were made in or that all interments have been removed from that portion of the property from which dedication is sought to be removed; and (2) That the portion of the property from which dedication is sought to be removed is not being used for interment of human remains.
[4] We do believe that it is important to point out, as we did in La. Atty. Gen. Op. No. 08-0186, that, should portions of a cemetery be left intact, ingress and egress to the remaining portions of the cemetery must be maintained for visitation and maintenance purposes.
[5] La.R.S. 8:304(B) reads:
An official act of dedication of cemetery property shall be filed with the clerk of the district court for the parish in which the cemetery is located and with the Louisiana Cemetery Board. These requirements shall not apply to individual cemetery spaces within dedicated cemetery property. The provisions of this Subsection shall apply only to a cemetery established after June 21, 2008.
[6] An important example of the security that this action provides is evident in La. Atty. Gen. Op. No. 10-0234, in which the subject property had already been put through the dedication-removal process prior to the specter arising of new burials being identified on the property. With the dedication on the property removed by a final judgment of a proper court, the identification of subsequent burials simply requires compliance with the Unmarked Burials Act, as the property is already undedicated.
[7] The "Cemetery Act" to which you refer in your questions is the entirety of Title 8 of the Revised Statutes with the exception of Chapter 10-A of that title (which is the Unmarked Burials Act).
[8] It is important to note that, in Louisiana, as in many other jurisdictions, the protections afforded to cemetery property under the law exist regardless of the classification of the property as public or private. La.R.S. 8:304-306 (no public/private distinction); La.R.S. 8:671,et seq. (specific inclusion of private property). See Ryan M. Seidemann,NAGPRA at 20: What Have the States Done to Expand Human RemainsProtections?, 33(2) MUSEUM ANTHROPOLOGY 199 (2010). Cf., 25 U.S.C. § 3001,et seq. (the companion federal legislation to many State burial protection laws does not apply to anything outside of federal and tribal land as it applies to in situ discoveries of human remains).
[9] See e.g., La. Atty. Gen. Op. No. 10-0018 (noting that the Thorny Lafon school in New Orleans was built atop a nineteenth century cemetery in the early to mid-twentieth century and that, although that nonconforming use may have been allowed at the time, it is inconsistent with the law since at least the 1940 Louisiana Supreme Court decision inHumphreys v. Bennett Oil Co., 197 So. 222 (La. 1940), and the reuse of nonconforming uses cannot be undertaken now in the absence of compliance with the Unmarked Burials Act, the dedication provisions, or both).
[10] La.R.S. 8:304-306 was part of the original Louisiana Cemetery Act, Acts 1974, No. 417.
[11] Humphreys, supra.
[12] La. Atty. Gen. Op. No. 10-0018; La. Atty. Gen. Op. No. 10-0234; Ryan M. Seidemann Rachel L. Moss, Places Worth Saving: A Legal Guideto the Protection of Historic Cemeteries in Louisiana and Recommendationsfor Additional Protection, 55 LOY. L. REV. 449 (2009).
[13] It is important to note that, unlike some other jurisdictions, custom holds a significant place as a source of Louisiana law. La.C.C. Art. 1.
[14] We are aware that some jurisdictions recognize analogous legal fictions for certain nonconforming uses in a zoning context. See e.g., Ala. Code 1975 § 4-6-7 (Alabama law grandfathering certain nonconforming uses around airports); A.C.A. § 14-363-206 (Arkansas law doing same); West's Ann.Cal.Gov. Code § 65863.4 (California law establishing a process to consider grandfathering certain nonconforming residential uses). However, due to the unique nature of cemeteries and due to the unambiguous absoluteness of the dedication provisions, we do not believe that the zoning analogy is appropriate in this context. See Mothe FuneralHomes, Inc. v. United States, 1995 WL 367939 (E.D.La. 1995) (noting the extremely unique nature of cemeteries under Louisiana law).
[15] See e.g., State of Louisiana v. Jetton, Original Petition, Nineteenth Judicial District Court (filed Sept. 30, 2010) (noting that the conversion of a traditional cemetery to a nonconforming use obliterated surface traces of the cemetery).
[16] In this regard, what we mean is that, if it is anticipated that human burials will be impacted by the removal of a nonconforming use and when those burials would otherwise be subject to the protections afforded in the Unmarked Burials Act, the removal of the nonconforming uses must proceed pursuant to the permitting requirements of the Unmarked Burials Act.
[17] The uses noted here in the text as conforming uses are illustrative and are not meant to be exclusive. However, we are of the opinion that any such uses must be consistent with and in furtherance of the "cemetery use" of the property.
[18] In this regard, the word "cleared" is intended to refer to the geographic area from which human burials were removed pursuant to an Unmarked Burials Act permit and that is then the subject of a court ruling removing the dedication to cemetery purposes.
[19] It is important to note that, although La.R.S. 8:304(B), which was enacted in 2008, now requires the recordation of the existence of a cemetery in the public records (at the time that it is created), the absence of any recordation in the public records of any cemetery does not avoid compliance with these provisions. See generally Humphreys v.Bennett Oil Corp., 197 So. 222 (La. 1940); Thomas v. Mobley, 118 So.2d 476
(La. Ct. App. 1 Cir. 1960). It is also important to note that Louisiana courts have held that the dedication of property as a cemetery is not subject to prescription. Locke v. Lester, 78 So. 2d 14, 16 (La. Ct. App 2 Cir. 1955).
[20] La.R.S. 8:306.
[21] See e.g., Ryan M. Seidemann, DESCRIPTIVE BIOARCHAEOLOGICAL ANALYSIS OF HUMAN REMAINS EXCAVATED FROM THE CHARITY HOSPITAL CEMETERY (160R175) FOR THE HURRICANE KATRINA MEMORIAL (2008) (This source discusses new construction in Charity Hospital I Cemetery in New Orleans. In this instance, human remains were allowed to remain in the ground underneath the new construction in the cemetery because the new construction was a consistent use of the property (a series of mausoleums to house the unidentified victims of Hurricane Katrina). Compliance with the Unmarked Burials Act in this situation was sufficient to satisfy Louisiana law because the property was not being put to a noncemetery use.).
[22] See e.g., La.R.S. 8:1(2), which defines "burial" as "theplacement of human remains in a grave" (emphasis added). The use of the term "placement" connotes an intentional act and not an act of nature as was presented by Hurricanes Katrina and Rita.
[23] La.R.S. 8:680 sets forth the requirements for notification to the proper law enforcement entities in the event of the inadvertent discovery of human remains.
[24] Accord, La. Atty. Gen. Op. No. 99-376.
[25] La.R.S. 8:680(C).
[26] La.R.S. 8:655 sets forth which individuals have the right to control the disposition of identified human remains, thus:
§ 655. Right of disposing of remains
A. The right to control interment, as defined in R.S. 8:1(26), of the remains of a deceased person, unless other specific directions have been given by the decedent in the form of a written and notarized declaration, vests in and devolves upon the following in the order named:
(1) The surviving spouse, if no petition for divorce has been filed by either spouse prior to the death of the decedent spouse.
(2) A majority of the surviving adult children of the decedent, not including grandchildren or other more remote descendants.
(3) The surviving parents of the decedent.
(4) A majority of the surviving adult brothers and sisters of the decedent.
(5) A majority of the adult persons respectively in the next degrees of kindred as established in Civil Code Article 880 et seq.
B. In the event that the decedent has made multiple declarations of interment, the last declaration shall control.
[27] This provision is consistent with La.R.S. 8:655, which would control once the release of the remains occurs.
[28] La.R.S. 33:1565(A).
[29] It should be noted, of course, that the "fifty years in age" as discussed herein does not refer to the actual chronological age of the deceased. Rather, this "age" refers more to a terminus post quem
concept, or the latest knowable date of the deposition of the remains.
[30] It is important to note that, although the coroner may have jurisdiction over such remains and be responsible for their ultimate disposition, the costs of that disposition are not borne by the coroner. For a discussion of the duties of the coroner, political subdivisions, and the State with regard to the disposition of paupers' remains, see
La. Atty. Gen. Op. No. 09-0144.
[31] Although there is no doubt that those who would bury the remains of a murder victim can also be said to be "intentionally" creating the interment, the purpose for the interment is different from that envisioned by La.R.S. 8:304-306. In the former scenario, the purpose is to conceal the evidence of a crime; while in the latter, the purpose is to create a final resting place for the mortal remains of a human being. Although the act, itself, is similar, the motives are significantly different and thus, we believe, should be treated differently from a legal perspective.
[32] This is excepting, of course, the scenario in which a crime victim's body is identified within a cemetery (but whose presence in the cemetery is unrelated to the intentional final disposition of that individual). In such a situation, clearly, the cemetery in which the remains are found does not lose its character as a dedicated cemetery; nor is the primary jurisdiction of law enforcement impinged upon merely because of the property's classification as a cemetery.
[33] This result is also consistent with common sense. It would be nonsensical for the simple presence of human remains (be they the remains of a murder victim, a disaster victim, or merely the remains of a death by natural causes) on a particular piece of property to trigger the dedication provisions and thus require court action to clear the title to the property for use for noncemetery purposes. This would be an absurd interpretation of the law of cemetery dedication in contravention of La.C.C. Art. 9.